**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 30 2016**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-34137 |
| | ) | |
| Robin L. Horvath, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-3058 |
| | ) | |
| Ericka Parker, Chapter 7 Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| v. | ) | |
| | ) | |
| Robin L. Horvath, | ) | |
| | ) | |
| Defendant and Cross-Defendant, | ) | |
| | ) | |
| The Nancy Packo Horvath Probate Estate, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross-Defendant, | ) | |
| | ) | |
| The Nancy Packo Horvath Trust Under the Amended and Restated Trust Agreement Dated March 22, 2002, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross Defendant, | ) | |

| | |
|---|---|
| Tony Packo's Toledo, LLC, | ) |
| | ) |
| Defendant, Counter-Claimant, | ) |
| Cross-Claimant, and Cross- | ) |
| Defendant, | ) |
| | ) |
| TPIP, LLC, | ) |
| | ) |
| Defendant, Counter-Claimant, | ) |
| Cross-Claimant, and Cross- | ) |
| Defendant. | ) |

**MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO COMPEL**

This adversary proceeding is before the court after hearing on a motion to compel discovery ("Motion") [Doc. # 112] filed by the Nancy Packo Horvath Probate Estate ("NPH Estate"), the Nancy Packo Horvath Trust ("NPH Trust"), and Robin L. Horvath in his capacity as executor of the NPH Estate and as trustee of the NPH Trust, (collectively, "the NPH Defendants"), and oppositions filed by Tony Packo's Toledo, LLC and TPIP, LLC (collectively, "the TP Defendants") [Doc. # 124] and the Chapter 7 Trustee [Doc. # 125]. The Motion seeks an order compelling discovery directed at the TP Defendants and the Chapter 7 Trustee. Counsel for the NPH Defendants, the TP Defendants and the Chapter 7 Trustee all attended the hearing in person. Defendant Robin L. Horvath ("Horvath") and counsel for Fifth Third Bank and for the state court Receiver also attended the hearing in person. Horvath is the Debtor in the underlying Chapter 7 case. For the reasons that follow, the Motion will be granted in part and denied in part.

**BACKGROUND**

The primary issue to be determined in this adversary proceeding is the ownership of certain recipes formerly used by Tony Packo's, Inc. ("TPI"), Packo Properties, LLC, and their subsidiaries (collectively, "the Packo Companies" or "the Packo Entities"). For a clear understanding of the issues relating to such ownership, which arise out of years of litigation in state court as well as this court, and any relevancy of the discovery requested in the Motion, which is directed primarily at the TP Defendants, the court finds it necessary to include the following background.

Nancy Packo Horvath and TPI were involved in litigation with one another in 2002. That litigation was resolved pursuant to a Term Sheet dated September 10, 2002 ("the Term Sheet"). [Doc. # 1, ¶ 15, Ex. B; Doc. # 42, ¶ 15]. On June 20, 2002, before negotiation of the Term Sheet, Nancy Packo Horvath executed an affidavit stating that, before her father Tony Packo Sr.'s death, he wrote down all of his food recipes in a spiral bound notebook ("the Recipe Notebook") and that she is the owner of those recipes and formulas. [Doc. # 1, ¶ 17, Ex. C; Doc. # 42, ¶ 17, Ex. 1]. The Term Sheet required Nancy Packo Horvath

to grant TPI a "fully paid, perpetual, exclusive, world-wide license" to use "the recipes and all other intellectual property used in the operation of the Packo's business." [Doc. # 1, attached Ex. B; Doc. # 42, ¶ 15]. On October 31, Nancy Packo Horvath, as licensor, and TPI, as licensee, executed a License Agreement, which states that "Licensor claims to own the Recipes" and grants a license "to use the Recipes. and all Improvements or derivations therefrom. . . ." [Doc. # 1, ¶ 21, Ex. D; Doc. # 42, ¶ 21]. The "Recipes" that are the subject of the License Agreement are defined to mean "the chili soup and hot dog sauce used by the Licensee in its restaurant, catering, and wholesale foods businesses." [*Id.*]. Nancy Packo Horvath died on April 23, 2003. [Doc. # 1, ¶ 3; Doc. # 42, ¶ 3; Doc. # 76, ¶ 3].

Some time thereafter, further litigation ensued. The following is a synopsis of proceedings in both state court and this court as set forth in greater detail in the court's Memorandum of Decision Denying Motion to Approve Compromise previously entered in the underlying Chapter 7 case. [Case No. 13-34137, Doc. # 126].[1]

> On August 18, 2010, Fifth Third [Bank], a secured creditor of the Packo Companies, obtained a cognovit judgment in the Lucas County, Ohio, Court of Common Pleas in the total amount of approximately $2,676,296, plus interest, costs and attorney fees, against the Packo Companies after their default on several loans and a cognovit judgment in the amount of approximately $669,000, plus costs and attorney fees, against Debtor and Anthony L. Packo, Jr. ("Packo, Jr.") as limited guarantors of the Packo Companies' debt. [Trustee's Ex. J]. On August 18, 2010, the state court also appointed the Skutch Company, Ltd, through its managing member Steve Skutch, as receiver over the assets of the Packo Companies. [Trustee's Ex. L]. Thereafter, extensive litigation ensued.
>
> Over one year after entry of the cognovit judgment, Debtor filed an Ohio Civil Rule 60(b) motion for relief from that judgment, arguing that Fifth Third acted in concert with Packo, Jr., and Anthony Packo, III ("Packo III") to divest him of his ownership interest in the Packo Companies by procuring a contrived default in the notes that were the subject of the cognovit judgment. The trial court denied the Rule 60(b) motion as untimely filed and, on May 3, 2013, the state court of appeals affirmed. [Trustee's Ex. P].
>
> In the meantime and after an unsuccessful closed bid process, the Receiver was directed by the state court to seek bids on the receivership assets. The Receiver ultimately received five offers to purchase the Packo Companies' assets, three of which the state court found to be competitive. Competitive offers included offers by TP Foods and by Nancy Packo, LLC, of which Debtor and his wife Terrie Horvath are the only members. [*See* Trustee's Ex. M, p. 2]. The offer of TP Foods was characterized as a cash offer to the state court and, on October 7, 2011, the state court directed the Receiver to accept that offer and negotiate an asset purchase agreement. Debtor appealed that order; however, that appeal was dismissed on January 5, 2012, for lack of a final appealable order. [*See* Trustee's Ex. O, p.

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

3

4].

Notwithstanding the fact that Debtor filed a timely appeal of the October 7 order and that Debtor's Rule 60(b) appeal was still pending, since no stay pending the appeals was sought, the receivership proceedings continued. On December 7, 2011, the state court entered an order confirming ownership of, among other things, recipes for products sold by the Packo Companies ["Asset Order"]. [Trustee's Ex. S]. The order defines "Recipes" as including "a list of all ingredients and their proportions" ["sold currently or previously by the entities subject to this Receivership"] and recipes defined in the License Agreement between Tony Packo's, Inc., as licensee, and Nancy Packo Horvath, as licensor. [*Id.* at 2]. In the order, the court found that the "Recipes" defined therein, "including . . . Recipes for chili soup and hot dog sauce, are exclusive assets of entities subject to this Receivership and thus are assets of the Receivership." [*Id.*]. The court further found that TP Foods had "conditioned its purchase of the Receivership assets upon it receiving sole and exclusive rights to and ownership of, the Recipes." [*Id.* at 2-3].

On December 19, 2011, the state court entered an order authorizing the Receiver to execute the Asset Purchase Agreement ("APA") negotiated with TP Foods. [*See* Trustee's Ex. O, p. 4]. The APA lists the assets being purchased and includes, among other things, "[a]ll trade names, trademarks, service marks, brand names, trade secrets . . . material subject to copyright and other intellectual property currently or previously used in the operation of the Business or otherwise owned by any of the Sellers" and "[a]ll rights of ownership and use with respect to recipes and cooking processes for products sold currently or previously by the Sellers in the restaurants, catering, food service and retail operations. . . including, without limitation, all of the forgoing that are listed on Schedule 1.1(j)." [Trustee's Ex. N, APA attached thereto, § 1.1(I) & (j)]. The APA's Schedule 1.1(j) lists the recipes to be purchased and includes Tony Packo hot dog sauce and chili. [*Id.* at Attachment to Schedule 1.1(j)].

On December 22, 2011, the state court entered an order confirming the sale of the receivership assets. Debtor timely appealed the December 19 and 22 orders. After a hearing held on January 26, 2012, the sale of receivership assets closed on February 3, 2012.

On January 11, 2013, the state court of appeals entered a Decision and Judgment, finding that the trial court lacked jurisdiction to enter the December 19 and 22 orders. [Trustee's Ex. O, p. 27]. . . .

[T]he state appellate court . . . found that the trial court's orders entered on December 19 and 22, 2011, approving the APA and confirming the sale, did interfere with the appellate court's ability to reverse, modify, or affirm the October 7, 2011, order directing the Receiver to accept TP Foods' offer. [*Id.* at 14-27]. The court thus determined that those orders were entered without jurisdiction and, as such, were void. [*Id.* at 27]. Because an appeal cannot lie from a void judgment, the appeal was dismissed on January 11, 2013. [*Id.* at 27, 40-41]. The court noted that, on remand, the trial court could enter an order confirming the sale of assets since the jurisdictional bar had been removed by the January 5, 2012, dismissal of Debtor's appeal of the October 7 order. [*Id.* at 29]. Because the closing on the sale of assets occurred on February 3, 2012, the appellate court stated that there are no jurisdictional grounds to unwind the sale. [*Id.* at 40].

Thereafter, on May 6, 2013, the state trial court entered an order approving the terms and conditions of sale as proposed in the APA and confirming the February 3, 2012, sale of receivership assets ("Order Confirming Sale"). [Trustee's Ex. Q, ¶¶ 15, 30-31]. . . . Debtor, Terrie Horvath, and Nancy Packo, LLC, . . . filed a notice of appeal from the May 6, 2013,

> Order Confirming Sale, and that appeal remains pending. . . . The appeal has been treated as stayed by the State of Ohio Sixth District Court of Appeals pending completion of Debtor's bankruptcy proceeding or relief from stay being granted by this court. [Doc. # 15, Ex. C].
> . . . .
> **Debtor's Bankruptcy Case**
> Petitioning Creditors, the Debtor's prepetition lawyers and accountant, filed this involuntary petition on October 7, 2013. The Order for Relief was entered on December 23, 2013, and the Trustee was appointed on January 16, 2014. Debtor's bankruptcy schedules initially filed in this case show assets that include, among other things, . . . "Tony Packo's Recipe 'Ingredient' List". . . . On February 10, 2015, . . . Debtor filed an amended Schedule B, adding "assets from the Estate of Nancy Packo Horvath, including, but not limited to, the License Agreement dated October 29, 2002, between Nancy Packo Horvath & Tony Packo's Inc. and any rights arising from that agreement." [Doc. # 119, Amended Schedule B, p. 4].

[Case No. 13-34137, Doc. # 126, pp. 2-5, 8].

As indicated earlier, Nancy Packo Horvath, died on April 23, 2003. On April 27, 2015, the NPH Estate was reopened in the Lucas County Common Pleas Court, Probate Division, under the case number previously assigned to it, and Horvath was appointed executor of the estate. [Doc. # 42, ¶ 3]. The sole asset in the Schedule of Assets filed with the Probate Court is identified as follows:

> INTANGIBLE PERSONAL PROPERTY. Pursuant to (without limitation) the September 10, 2002 *Term Sheet*, the RECIPES (including, but not limited to, the chili soup and hot dog sauce used by Tony Packo's, Inc. in its restaurant, catering and wholesale food businesses, and all "Improvements or derivations therefrom" per the October 31, 2002 *License Agreement*) and all other INTELLECTUAL PROPERTY used in the operation of Tony Packo's, Inc.,'s business, and all of the RECIPES AND FORMULAS referenced in the June 10, 2002 *Affidavit of Nancy Packo Horvath*.

[Doc. # 1, ¶ 66, Ex. P; Doc. # 42, ¶ 66]. On May 4, 2015, Robin Horvath, as executor of the NPH Estate, executed an Assignment of Interest in Recipes, Formulas and Intellectual Property that purports to assign the above stated assets from the NPH Estate to the NPH Trust. [Doc. # 1, ¶ 67, Ex. Q; Doc. # 42, ¶ 67].

On June 9, 2015, the Trustee commenced this adversary proceeding seeking (1) a declaration that the bankruptcy estate, and not the NPH Estate or the NPH Trust, has any remaining interest in the Recipes and that Robin Horvath's transfer of the Recipes to the NPH Estate and then to the NPH Trust be avoided as unauthorized postpetition transfers under 11 U.S.C. § 549, (2) an order directing Horvath to turn over to the Trustee the Recipe Notebook and documents that contain recipes derived from or based upon the Recipe Notebook, and (3) an order enjoining Horvath from taking any further action with respect to the Recipes. [Doc. # 1, ¶¶ 73-87]. The NPH Defendants filed an answer and a counterclaim and cross-claims seeking a declaration that the recipes, formulas and intellectual property used in the operation of the Packo Entities

5

business were the sole and exclusive property of the NPH Estate until assigned to the NPH Trust in accordance with the Nancy Packo Horvath Will. [Doc. # 42, pp. 34-36]. The TP Defendants also answered and filed counterclaims and crossclaims seeking, among other things, a declaration that it is the sole owner of the Recipes. [Doc. # 45, pp. 6-12].

## DISCUSSION

The NPH Defendants seek an order compelling the TP Defendants to provide specific discovery identified in the Motion as relating to (1) ownership of the recipes at issue in this proceeding, (2) harm that would justify granting an injunction preventing disclosure of the recipes, (3) the trade secret status of the recipes, and (4) the tangible or intangible nature of the recipes. In addition, they seek to compel both the TP Defendants and the Trustee to provide certain documents regarding communications between the TP Defendants and the state court Receiver, the Trustee, and Fifth Third Bank, or their counsel, on certain identified subject matters that the TP Defendants and the Trustee claim are privileged.

In general, "the scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1)[2]; Fed. R. Bankr. P. 7026. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Nevertheless, "discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id.* Rule 26(b)(2)(C) provides in relevant part as follows:

> **(C) When Required.** On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> . . . .
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(C)(iii).

Rule 37 authorizes a motion to compel discovery when a party fails to provide proper response to interrogatories under Rule 33 or requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B); Fed. R. Bankr. P. 7037. If an objection based on relevancy of the information sought is raised, the proponent of a motion to compel must demonstrate that its requests are relevant to the claims or defenses in the pending proceeding. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). If

---

[2] Rule 26(b) was amended effective December 1, 2015. The amended version governs "in all proceeding in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." United States Supreme Court order of April 29, 2015, transmitting to Congress proposed 2015 rule amendments. Although this proceeding was pending on December 1, 2015, because the court held the hearing and heard argument on the Motion to Compel before that date, the court will apply the rules in effect at the time of the hearing.

6

relevancy is shown, "the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id.* at 310.

The court discusses the discovery that is in dispute under the subject matter of the headings presented in the Motion.

**1. Requests to the TP Defendants Regarding Ownership of Recipes**

The NPH Defendants ask the court to compel answers to the following interrogatories, which they contend are relevant to the ownership issues in this proceeding. Interrogatory No. 1 asks the TP Defendants to "[i]dentify each item of food that [they] have sold and/or are selling, either directly or indirectly, in their restaurant, catering, wholesale food business or other line of business after February 3, 2012, and, for each item of food, indicate which line of business the food product is sold." [Doc. # 113, p. 23 (as paginated on the exhibit, not the docket)]. Interrogatory No. 2 is divided into six subparts and asks as to each food item identified in No. 1 if the TP Defendants use a recipe to make the food item that

 1. was used by TPI as of Sept. 10, 2002 [date of Term Sheet];

 2. is "referenced in" § 1.8 of the License Agmt, or is an improvement or derivation of such recipe and whether they use the recipe;

 3. is derived from a recipe provided to TP Defendants before the APA was executed, and if so, the process of derivation;

 4. is derived from a recipe provided to TP Defendants after the APA was executed, and if so, the process of derivation;

 5. is independent and distinct from any recipe used by TPI before Feb. 4, 2012 [the sale of the Packo Entities' assets closed Feb. 3, 2012], and if so,

 6. a description of process used to create and develop the recipe and explain why it is not derived from a recipe used by TPI before Feb. 4, 2012.
[*Id.*].

The NPH Defendants also ask the court to compel production of certain documents they contend are relevant to the ownership issues in this proceeding; specifically, Request for Production of Documents No. 20, requesting "[d]ocuments relating to the use of the Recipes by the TP Defendants before and after the closing of the transaction contemplated by the APA" and the following requests found in the multifaceted Request for Production of Documents No. 18:

 1.   documents relating to ownership of the Recipes,

 2.   documents relating to any agreement to purchase or receive recipes or rights under the

7

> license agreement, Term Sheet or Term Sheet Agreement from NPH's successor or any other Person, or any sale, transfer or assignment of the Recipes or rights under the License Agreement, Term Sheet or Term Sheet Agreement to the TP Defendants,
>
> 3. documents relating to the identity of Persons who have used or use the recipes or rights under the License Agreement, Term Sheet and Term Sheet Agreement after February 3, 2012, including without limitation, the TP Defendants and other Persons and under what authority such use occurred.

The TP Defendants object to each of the foregoing discovery requests, arguing, among other things, that the requests are overly broad, unduly burdensome and not relevant to the claims and defenses in this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

At issue in this case is whether the bankruptcy estate has an ownership interest in the "Recipes," which are identified in the Complaint as follows : "the Recipe Notebook" and "any and all interests claimed by N. Horvath with respect to any and all recipes in, derived from, based upon, etc. the Recipe Notebook that were used by any of the Packo Entities and/or their predecessors at any time, including but not limited to recipes for chili soup and hot dog sauce."[3] [Doc. # 1, Complaint, ¶ 17].

The factual basis of the TP Defendants' claimed interest in the Recipes is the December 7, 2011, order entered in the state court receivership proceeding finding that the recipes "sold currently or previously by the entities subject to the Receivership," including the hot dog sauce and chili soup recipes referred to in the License Agreement, were assets of the receivership and its later order confirming the sale of assets, including those recipes as listed in the Asset Purchase Agreement. The Trustee's claimed interest on behalf of the Horvath bankruptcy estate is based upon the same facts but is limited she believes to an interest, if any, in the pending state court appeal of the Confirmation Order filed prepetition by Horvath.

The factual bases of the NPH and RLH Defendants' claimed interest in the Recipes are (1) their contention that the December 7, 2011, order is invalid because it was entered without jurisdiction or, alternatively, is not enforceable against them as they were not parties to the receivership proceeding, (2) the NPH affidavit stating that her father gave her the Recipe Notebook with instructions that she was to be the sole keeper and owner of the recipes and (3) their contention that, pursuant to § 6.1 of the License Agreement, the Agreement terminated when TPI ceased using the hot dog sauce and recipes in its business

---

[3] By contrast, the NPH Defendants define "Recipes" for purposes of their discovery requests to mean "the recipes and other intellectual property referenced in Paragraph 9 of the Term Sheet, Paragraphs 1.4, 1.8 and 2 of the License Agreement, and the description of such property in the NPH Trust Agreement." [Doc. # 113, p. 6].

8

since the TP Defendants did not take advantage of the opportunity to secure conveyance of the recipes under § 6.2 of the License Agreement. The NPH Defendants have failed to show, and the court cannot discern, how the fact that the TP Defendants may currently use or may have used at any particular point in time any particular recipe has any relevancy to the factual basis of any party's claimed ownership interest in the Recipes or how such information may lead to admissible evidence regarding ownership.

Furthermore, the NPH Defendants' request for documents relating to the identity of persons who have used or use the Recipes after February 3, 2012, is overly broad. The NPH Defendants define "documents" to include "any kind of information, data and/or communication recorded or stored in any form. . . ." Thus, the request would require production of documents from, among other things, personnel files and payroll documents relating to TP Defendants' employees to the extent they use or used the recipes, none of which would be relevant to the ownership of the recipes or reasonably calculated to lead to admissible evidence regarding ownership. For all of these reasons, the court sustains the TP Defendants' objections to Interrogatory Nos. 1 and 2, Request for Production No. 20, and part 3, as set forth above, of Request for Production No. 18.

However, the court finds document requests in parts 1 and 2 of Request for Production No. 18 as set forth above are relevant to the ownership issues in this case. While stating that they were not waving their objections, the TP Defendants responded to these requests by directing the NPH Defendants to numerous documents in the record in this case and in the underlying bankruptcy case, documents previously provided by the Trustee to counsel for the NPH Defendants and to documents attached to their response, which are not otherwise identified for purposes of this Motion. The NPH Defendants do not contend that the TP Defendants' response is insufficient other than to ask the court to compel production of the requested documents. To the extent that the NPH Defendants are asking the court to compel the actual production of documents rather than directing them to specific documents in the record or that have already been provided to them, the court declines to do so. The NPH Defendants are parties in the proceeding and are interested parties in the underlying bankruptcy case and have access to the documents that have been filed with the court. *See The Way Int'l v. Exec. Risk Indem., Inc.*, No. 3:07CV294, 2009 WL 3157402, *10, 2009 U.S. Dist. LEXIS 90221, *32-33 (S.D. Ohio Jan. 27, 2009) (citing cases and stating that "parties generally may not compel another party to produce documents that are readily available to the requesting party through other means").

## 2. Requests regarding Harm

The NPH Defendants argue that the Trustee's request for an injunction has placed harm as a key

issue in this proceeding and that the TP Defendants have refused to provide discovery regarding harm. Specifically, the NPH Defendants ask the court to compel production of documents requested in Request for Production of Documents Nos. 21 and 30 through 34.

With respect to harm when considering the Trustee's request for an injunction, the court considers whether the bankruptcy estate of which Plaintiff is the trustee will suffer irreparable injury without the injunction, whether the issuance of the injunction would cause substantial harm to others, and whether the public interest would be served by issuance of the injunction. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Requests for Production of Documents Nos. 30 and 31 request documents relating to harm the TP Defendants have suffered due to acts or omissions of the NPH Defendants and Robin Horvath and Request for Production No. 32 requests documents relating to harm the TP Defendants are likely to suffer if the Trustee does not prevail on her claims. Requests for Production of Documents Nos. 33 and 34 request documents relating to any harm that another person or the public are likely to suffer if the Trustee does not prevail on her claims, which of course includes the claim for an injunction. The NPH Defendants do not address, and thus have failed to show, how its requests would lead to discovery of admissible evidence relating to injury *to the bankruptcy estate* if the injunction is not granted or harm to others if the injunction is granted. There are no claims asserted in this case by the TP Defendants against the NPH Defendants for damages. Although the TP Defendants raise other objections as well, the court sustains their objection that Requests for Production Nos. 30 through 34 are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Request for Production of Documents No. 21 requests documents "relating" to (1) "the value of the Recipes," and (2) "the enhancement or impairment of such value by any act or omission undertaken by [Robin Horvath] or the NPH Defendants, or that could be undertaken by [Robin Horvath] or the NPH Defendants." [Doc. # 115, Ex. A, Request No. 21]. The NPH Defendants define "relating" to mean "constituting, evidencing or having any connection or relationship to the stated subject matter, whether direct or indirect, whatsoever." [*Id.*, Ex. A, p. 6]. The TP Defendants object to the request, arguing that the request is overly broad and burdensome, neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and seeks documents that are proprietary, confidential, or commercially sensitive to the TP Defendants.

Rule 26(b) permits the court to limit the extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance

10

of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). In this case, in support of her request for an injunction, the Trustee argues that the estate will be irreparably harmed by the *disclosure* of the Recipes, thus implicating their trade secret status under Ohio law. The proposed discovery regarding the actual value of the Recipes, be it $500 or $5 million, will not go far in resolving that issue. There is no dollar amount in controversy in this case. The Recipes becoming known or readily ascertainable by others is the harm asserted, regardless of the extent of their value. *Cf Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 866-67 (S.D. Ohio 2008) (stating that "the loss of trade secrets is usually considered an irreparable harm that cannot be measured in money damages"); *Columbus Steel Castings Co. v. King Tool Co.*, No. 11AP-351, 2011-Ohio-6826, 2011 WL 6931518, *10, 2011 Ohio App. LEXIS 5648, ** 20-28 (Ohio Ct. App. Dec. 30, 2011)(stating that trade secret cases "lend themselves to a presumption of harm" since "it is often difficult to prove money damages or lost profits with the degree of certainty that is normally expected in other business litigation). Thus, even assuming that the requested discovery would otherwise be permitted, the court finds that the burden and expense of producing documents "relating" to value outweighs its likely benefit as it relates to the issues in this proceeding.

3. **Requests regarding Trade Secret Status of Recipes**

As argued by the TP Defendants, the Trustee's request for an injunction implicates the trade secret status of the Recipes. The NPH Defendants thus request, in part, in Request for Production of Documents No. 18, "documents relating to the provision of recipes to TP Defendants or any person working for them, including, without limitation, any chef, before full execution of APA" and in Document Request No. 19, "documents constituting, evidencing or otherwise Relating to any non-disclosure, non-use and/or non-competition agreement or like restrictive covenants the TP Defendants have entered into with any Person who had or has access to the Recipes." The TP Defendants object, arguing that the requests are overly broad and burdensome and are not relevant or reasonably calculated to lead to the discovery of admissible evidence. However, as one of the requirements for trade secret status under Ohio law is that the recipes be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," Ohio Rev. Code § 1333.61(D)(2), the court finds Document Request No. 19 regarding such efforts and that part of Document Request No. 18 relating to persons to whom the Recipes have been disclosed are reasonably calculated to lead to the discovery of admissible evidence relating to their trade secret status and are not overly broad. The TP Defendants offer no explanation as to why these requests are burdensome. The TP Defendants' objections are therefore overruled and the NPH Defendants' Motion will be granted as to those requests.

The NPH Defendants also ask the court to compel discovery requested in Interrogatory No. 3, which

requests information as to each food item identified in response to Interrogatory No. 1, specifically, whether each item is committed to writing, whether the TP Defendants contend that each item is a trade secret, if the value of the recipe requires secrecy, and what measures the TP Defendants have taken to protect the value and secrecy of the recipe for each food item. However, as discussed above, the court has sustained the TP Defendants' objection to Interrogatory No. 1. Furthermore, the food items that the NPH Defendants requested be identified in Interrogatory No. 1, and thus that are the subject of Interrogatory No. 3, are *all* food items the TP Defendants have sold or are selling. The request is overly broad in that the only recipes at issue in this proceeding are the recipes found in or derived from the Recipe Notebook. The TP Defendants' objection is sustained as to Interrogatory No. 3.

**4. Requests Regarding Tangible or Intangible Nature of the Recipes**

Whether the Recipes constitute tangible or intangible property is an issue that relates to the ownership of the Recipes and, to the extent they were owned by Nancy Packo Horvath, whether as tangible personal property they were bequeathed to Horvath and are thus part of the bankruptcy estate or to the NPH Trust. The NPH Defendants argue that Interrogatory No. 3 is also relevant to this issue. However, for the same reasons discussed above, the TP Defendants' objection is sustained as to this interrogatory.

The NPH Defendants also ask the court to compel production of documents requested in Request for Production of Documents No. 22, which they further contend are relevant to the tangible or intangible nature of the Recipes. That request asks the TP Defendants to produce "any cash flow analysis, balance sheet, financial statement, audited or unaudited, accounting work paper, tax return or filing, or other Document in which the TP Defendants characterize the Recipes as tangible or intangible property." [Doc. # 113, p. 15]. The TP Defendants object based on relevancy and that the request is overly broad and burdensome and seeks documents that are proprietary, confidential, or commercially sensitive to them. The court sustains the objection based on relevancy, as the NPH Defendants have offered no explanation as to how the requested documents will assist the court in determining the actual nature of the Recipes as tangible or intangible, regardless of how the TP Defendants characterize them at any given time.

**5. Other Document Requests**

The NPH Defendants ask the court to compel the TP Defendants and the Trustee to produce a privilege log for documents withheld pursuant to a claim of privilege with respect to requests of the TP Defendants at Request for Production of Documents Nos. 12, 15-17, 23-24, 26-29 and of the Trustee at Request for Production of Documents Nos. 23-24, 26-27 and 29 and to produce all responsive documents in redacted form. The NPH Defendants do not address the TP Defendants' and the Trustee's objections

12

to the requested discovery based on relevancy or that the requests are vague, overly broad and burdensome.

Document request No. 12 requested of the TP Defendants requests documents "Relating to the TP Defendants knowledge of, communications about, consideration of options, decisions made and actions undertaken in connection with and/or participation in the Bankruptcy Proceeding, Adversary Proceeding [No.] 15-3041, and this Adversary Proceeding." [Doc. # 113, p. 11]. This request would require production of every document that has any connection with not only this adversary proceeding but the underlying bankruptcy case and the adversary proceeding commenced by the United States Trustee for revocation of Horvath's discharge. The focus of this proceeding, on the other hand, is the narrow issue of ownership of the Recipes. The NPH Defendants have failed to show how the requested documents are relevant to any issue to be decided in this proceeding. The court sustains the TP Defendant's objection that document request No. 12 is overly broad and irrelevant.

Document requests No. 23 and 24 that are requested of the TP Defendants request documents relating to "dealings" with "the Receiver from the time of his appointment through today" and with "the Chapter 7 Trustee from the commencement of the Bankruptcy Case through today" "whether in connection with the APA, the State Court Litigation, the State Court Litigation Appeals, the Bankruptcy Proceeding, Adversary Proceeding [No.] 15-3041, [this] Adversary Proceeding, or for some other contract, transaction, proceeding or subject matter." [*Id.* at p. 15]. Identical document requests are propounded on the Trustee as to her "dealings" with the Receiver and the TP Defendants with the addition of requesting documents relating her "knowledge of the TP Defendants' dealings with the Receiver" on the same subject matter. [Doc. # 114, p. 15]. These requests would require production of every document that has any connection not only with the underlying bankruptcy case and other proceedings in this court and with the Receivership and extensive state court litigation but also documents that have any connection with "some other contract, transaction, proceeding or subject matter." For the same reasons discussed with respect to request No. 12, the court sustains the TP Defendants' and the Trustee's objections that these requests are overly broad and not relevant to the issues to be decided in this proceeding. The court also sustains their objections based on the requests being unduly vague, particularly with regard to the meaning of "dealings" and " some other contract, transaction, proceeding or subject matter."

Document requests Nos. 26 through 29 that are requested of the TP Defendants request documents relating to communications between the TP Defendants and the Trustee, the Receiver, the United States Trustee, and Fifth Third Bank, "either directly or indirectly through their counsel" concerning the following subject matters:

(a) subject matter contained in Requests for Production of Documents Nos. 1-14;

(b) the estate plan of NPH, the NPH Estate, NPH Probate Estate, the NPH Trust and the NPH Trust Agreement;

(c) the State Court Litigation, and State Court Litigation Appeals;

(d) the Recipes;

(e) any proposed or actual resolution of matters in the Bankruptcy Proceeding, Adversary Proceeding (15-3058), Adversary Proceeding (15-3041), State Court Litigation and the Recipes, whether complete or partial, or submitted to the court for approval;

(f) any outcome of Bankruptcy Proceeding, Adversary Proceeding (15-3058), Adversary Proceeding (15-3041), State Court Litigation or disposition of the Recipes that is possible, likely, anticipated or expected, or which the TP Defendants and/or Fifth Third Bank hope to be achieve, minimize or avoid; and

(g) any harm that a party or non-party to Adversary Proceeding (15-3058) may suffer in the event that the Chapter 7 Trustee fails to prevail on her claims, or any aspect of them, the TP Defendants fail to prevail on any of their claims or any aspect of them, or the NPH Defendants prevail on any of their claims, or any aspect of them.

[Doc. # 113, pp. 16-19]. The TP Defendants request documents of the Trustee in requests Nos. 26, 27, and 29 concerning the same subject matter relating to her communications with the TP Defendants as well as with the Receiver and with Fifth Third Bank or their counsel. [Doc. # 114, pp. 16-17, 19]. The court finds these requests overly broad and, for reasons previously discussed, irrelevant to any issue to be decided in this proceeding. For these reasons, the TP Defendants and the Trustee's objections will be sustained.

Documents requested of the TP Defendants at Nos. 15 through 17 request documents "Relating to the TP Defendants' knowledge of, communications about, consideration of options, decisions made and actions undertaken in connection with" the estate plan of Nancy Packo Horvath, the NPH Estate, the NPH Probate Estate, the NPH Trust, the NPH Trust Assignment, the Term Sheet, License Agreement and the Term Sheet Agreement. As to each request, the TP Defendants object, arguing, among other things, that the requests are vague, overly broad and burdensome. The court finds these requests vague with regard to the meaning of "consideration of options" and with regard to the timing of the TP Defendants' knowledge, communications, consideration of options, decisions made and actions undertaken. And to the extent that no time restriction is set forth, the court also finds the requests overly broad. For these reasons, the TP Defendants' objections are sustained.

The court will not require the TP Defendants or the Trustee to undertake the burdensome and

14

unnecessary task of preparing a privilege log with respect to the document requests that the court has found are overly broad, vague and/or irrelevant to the issues in this proceeding.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the NPH Defendants' Motion to Compel [Doc. # 112] be, and hereby is, **GRANTED in part** and **DENIED in part** as specifically set forth in the court's Memorandum of Decision; and

**IT IS FURTHER ORDERED** that the TP Defendants provide the requested discovery that the court has determined is proper as set forth in the Memorandum of Decision on or before **April 27, 2016**.

###