**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 7 2016**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-34137 |
| | ) | |
| Robin L. Horvath, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-3058 |
| | ) | |
| Ericka Parker, Chapter 7 Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| v. | ) | |
| | ) | |
| Robin L. Horvath, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant and Cross-Defendant, | ) | |
| | ) | |
| The Nancy Packo Horvath Probate Estate, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross-Defendant, | ) | |
| | ) | |
| The Nancy Packo Horvath Trust Under the Amended and Restated Trust Agreement Dated March 22, 2002, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross Defendant, | ) | |

Tony Packo's Toledo, LLC,                           )
                                                     )
          Defendant, Counter-Claimant,               )
          Cross-Claimant, and Cross-                 )
          Defendant,                                 )
                                                     )
TPIP, LLC,                                           )
                                                     )
          Defendant, Counter-Claimant,               )
          Cross-Claimant, and Cross-                 )
          Defendant.                                 )

## MEMORANDUM OF DECISION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on motions for summary judgment filed by Plaintiff and by Defendants Tony Packo's Toledo, LLC, f/k/a TP Foods, LLC, and TPIP, LLC ("TPIP") (jointly, "TP Defendants" or "TP Foods") [Doc. ## 140 &143], motions for summary judgment and oppositions to Plaintiff's and the TP Defendants' motions filed by the Nancy Packo Horvath Probate Estate ("NPH Estate"), Robin Horvath in his capacity as executor of the NPH Estate, the Nancy Packo Horvath Trust ("NPH Trust"), and Robin Horvath in his capacity as trustee of the NPH Trust (collectively, "the NPH Defendants"), and by Robin Horvath, individually ("Horvath") and as beneficiary of the NPH Estate and NPH Trust (all three collectively "the RLH Defendants") [Doc. ##155 & 156], objections to the NPH Defendants' and RLH Defendants' motions and replies in support of their own respective motions filed by Plaintiff and the TP Defendants [Doc. ## 157 & 158], and the NPH Defendants' and RLH Defendants' replies [Doc. ## 162 & 163].

Plaintiff is the duly appointed and acting Trustee and Horvath is the debtor in the underlying Chapter 7 bankruptcy case. Horvath is a fifty percent owner of Tony Packo's, Inc. and related entities ("Packo Companies"), which interest now belongs to the bankruptcy estate in the underlying Chapter 7 case. Horvath is also the executor of the NPH Estate and the trustee of the NPH Trust. The question underlying the claims, counterclaims and cross-claims in this adversary proceeding is the ownership of recipes and intellectual property that were used by the Packo Companies before their assets were sold pursuant to a receivership proceeding in the Lucas County, Ohio, Common Pleas Court ("State Court") and the extent of the bankruptcy estate's interest, if any, in that property.

## FACTUAL BACKGROUND

The competing claims of ownership arise out of litigation in State Court involving disagreements amongst the owners of Tony Packo's, Inc. ("TPI"), a State Court receivership proceeding with respect to

2

the Packo Companies, the underlying involuntary Chapter 7 bankruptcy case commenced against Horvath, and subsequent probate court proceedings. Unless otherwise indicated, the following facts are undisputed.

## I. 2002 State Court Litigation between Owners of TPI ("2002 Litigation")

On July 10, 2002, Horvath and his mother, Nancy Packo Horvath ("NPH"), who together at that time owned fifty percent of the shares of TPI, commenced an action in State Court by filing a verified complaint against TPI and Anthony Packo, Jr. ("Packo, Jr.") and Anthony Packo III ("Packo III"), who together owned the remaining shares of TPI. [Doc. # 155, Ex. 1, ¶¶ 1-4]. The case was brought as both a shareholder derivative action seeking compensatory damages caused by an alleged breach of duty by those defendants and as a direct action seeking compensatory damages allegedly sustained by Horvath and NPH individually. [*Id.* at ¶ 6].

The verified complaint avers, among other things, that TPI was incorporated in 1968 as the successor-in-interest to Tony Packo's Café, a proprietorship started in 1932 by NPH's parents, Anthony Packo, Sr. ("Packo, Sr.") and Rose Packo. [*Id.* at ¶¶10-11]. It also avers that, in 1962, Packo, Sr. "gave all of his food recipes for the sausage, pickles and peppers, and the sauce to Nancy Packo Horvath with instructions that she was to be the sole keeper of the recipes for the family business" and that Packo, Sr., died in 1963. [*Id.* at ¶ 13]. Prior to the verified complaint being filed, NPH executed an affidavit on June 10, 2002, ("NPH Affidavit"), stating that in July 1962 her father "wrote down all of his food recipes in a spiral bound notebook that were used for the entire menu. My father gave all the recipes to me with the instructions that I was to be the sole keeper and owner of his recipes and formulas." [Doc. # 1, ¶ 17 and attached Ex. C and ¶ 17 of Doc. ## 42, 43, 45 & 76]. NPH had possession of the spiral bound notebook ("Recipe Notebook")[1]; however, Horvath has had possession of it since removing it from NPH's home shortly before her death in April 2003. [Case No. 13-34137, Doc. # 168, p. 293-94 & Doc. # 195-1, p. 583[2]].[3]

---

[1] Reference herein to the "Recipe Notebook" refers to all of the pages that comprised the spiral bound notebook containing the relevant recipes, as Horvath testified at his Bankruptcy Rule 2004 examination that the spiral binding has been removed. [Case No. 13-34137, Doc. # 168, p. 293].

[2]

Document No. 195-1 filed in the underlying bankruptcy case, Case No. 13-34137, is volume II of the transcript of the Bankruptcy Rule 2004 examination of Robin Horvath. References in this opinion to page numbers in that document are references to the actual page number of the transcript, not the number digitally displayed when accessing the electronically filed document.

[3] The court takes judicial notice of the contents of its case docket and record. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

The 2002 Litigation was dismissed on November 5, 2002, pursuant to a settlement. [Doc. # 155, Ex. 4]. The parties entered into a Term Sheet that set forth the settlement and outlined other documents to be executed as part of the settlement. [*See* Doc. # 1, ¶ 15 & attached Ex. B and ¶ 15 of Doc. ## 42, 43, 45 & 76]. The Term Sheet provides, among other things, that

> [NPH] will grant to [TPI] a fully-paid, perpetual, exclusive, world-wide license, including the right to sublicense, the recipes and all other intellectual property used in the operation of the Packo's business. If [TPI] or any of its affiliates is sold to a third-party and the third-party requires as a condition of consummating the acquisition that it receive [NPH's] interest, if any, in the intellectual property [NPH] shall convey such interest to the third-party without further compensation.

[Doc. # 1, Ex. B, ¶ 9]. It also provides that, for NPH's lifetime, TPI would pay her $6,500 more per year than it was currently paying her and would provide a car and gasoline, health insurance, life insurance, and food privileges consistent with TPI's past practice. [*Id.* at ¶ 10]. In addition, the Term Sheet provides that TPI would pay NPH annual installments of at least $10,000 until she had received the aggregate sum of $30,000. [*Id.* at ¶ 12].

Pursuant to the Term Sheet, on October 31, 2002, TPI, as licensee, and NPH, as licensor, entered into a License Agreement, which was signed by NPH, individually, and by Packo, Jr. and Horvath, as officers of TPI. [Doc. # 1, ¶ 21 and attached Ex. D and ¶ 21 of Doc. ## 42, 43, 45, & 76]. The License Agreement states that "Licensor claims ownership of certain intellectual property used by Licensee in its restaurant, catering, and wholesale foods businesses" and that "Licensor claims to own the Recipes." [Doc. # 1, Ex. D, Recitals & ¶ 3.1.4]. It defines "Recipes" to mean "the recipes to the chili soup and hot dog sauce used by the Licensee in its restaurant, catering, and wholesale foods businesses" and grants to TPI an "irrevocable, perpetual, exclusive, royalty-free, right and license, with unrestricted rights to sub-license, to use the Recipes and all Improvements or derivations therefrom in the [entire world]." [*Id.* at ¶¶ 1.8, 1.9, & 2]. The License Agreement further provides:

> If . . . all or substantially all of the assets of Licensee or any of its affiliates are sold to a third-party and the third-party requires, as a condition to consummating the transaction, that Licensor convey her interest, if any, in the Recipes to the third-party, then Licensor shall execute the requested instruments of conveyance without further compensation.

[*Id.* at ¶ 6.2].

## II. State Court Receivership Proceeding

On August 18, 2010, after Fifth Third Bank obtained a cognovit judgment in the State Court in the total amount of approximately $2,676,296, plus interest, costs and attorney fees, against the Packo

Companies, the State Court appointed a receiver for all of the real and personal property of the Packo Companies ("Receivership Entities"), ordered him to take possession and control of all such assets, including general intangibles, and ordered all such assets placed in *custodia legis.* [Doc. # 141, Ex. C, ¶¶ 1 & 2(b)]. The receiver was authorized to negotiate and effect an orderly sale or transfer of all or any portion of the assets. [*Id.* at ¶ 2(g)].

On October 7, 2011, the State Court issued an order directing the receiver to accept the offer submitted by TP Foods to purchase assets of the Receivership Entities. Horvath filed an appeal from that order, which was perfected on November 3, 2011. He did not move to stay the trial court proceedings pending resolution of his appeal. *Horvath v. Packo*, 985 N.E.2d 966, 969 (2013). Horvath's appeal was dismissed on January 5, 2012, for lack of a final appealable order. *Id.*

Notwithstanding Horvath's timely appeal of the October 7 order, the receivership proceedings continued. On December 7, 2011, the State Court entered an order determining ownership of recipes for products sold by the Receivership Entities and intellectual property used in the operation of those entities ("Recipe Order"). [Doc. # 141, Ex. D]. The order defines "Recipes" as "recipes . . . for all products sold currently or previously by the entities subject to this Receivership . . . or licensed for sale by others" and specifically includes in the definition the recipes defined in the License Agreement. [*Id.* at 2]. In the order, the court found that the "Recipes" defined therein, "including . . . Recipes for chili soup and hot dog sauce, are exclusive assets of entities subject to this Receivership and thus are assets of the Receivership." [*Id.*]. The order grants the Receiver the "sole, exclusive and unrestricted right to sell and transfer. . . all Recipes." [*Id.* at 3]. In that order, the State Court also found that all trade names and intellectual property used in the operations of the Receivership Entities are assets of the Receivership that may be sold by the Receiver. [*Id.*].

On December 19, 2011, the State Court entered an order authorizing the Receiver to execute the Asset Purchase Agreement ("APA") negotiated with TP Foods. [Doc. # 141, Ex. K, pp. 15-104]. The APA lists the assets being purchased and includes, among other things, "[a]ll trade names, trademarks, service marks, brand names, trade secrets . . .material subject to copyright and other intellectual property currently or previously used in the operation of the Business or otherwise owned by any of the Sellers" and "[a]ll rights of ownership and use with respect to recipes and cooking processes for products sold currently or previously by the Sellers in the restaurants, catering, food service and retail operations. . . including, without limitation, all of the foregoing that are listed on Schedule 1.1(j)." [*Id.* at 16, § 1.1(I) & (j)]. The APA's Schedule 1.1(j) lists the recipes to be purchased and includes Tony Packo hot dog sauce and chili. [*Id.* at 84].

5

On December 22, 2011, the State Court entered an order confirming the sale of the receivership assets. [Doc. # 141, Ex. F]. Horvath timely appealed the December 19 and 22 orders. [*Id.*, Ex. G]. He later filed an amended notice of appeal in an attempt to also appeal from the December 7 Recipe Order. [*Id.,* Ex. H.] Although Horvath was ordered to file a motion for leave to file an amended notice of appeal, [*id.*, Ex. I], he never did so, [*see id.*, Ex. J]. Horvath also again did not seek a stay of the Receivership proceedings. *Horvath*, 985 N.E.2d at 969. After a hearing held by the trial court on January 26, 2012, the sale of receivership assets to TP Foods, LLC, closed on February 3, 2012. [Doc. # 141, Ex. P, ¶¶ 10-11]. Pursuant to the Asset Purchase Agreement and Bill of Sale, TP Foods directed the Receiver to convey the recipes and intellectual property to TPIP. [Doc. # 45, Counterclaim ¶2; Doc. # 1, Ex. J; Doc. # 74, ¶ 2].

In a decision entered on January 11, 2013, discussed more fully below in this court's analysis, the Ohio Sixth District Court of Appeals entered its decision finding that the trial court lacked jurisdiction to enter the December 19 and 22 orders due to the fact that the appeal of the October 7 order was pending at the time the orders were entered. *Horvath*, 985 N.E.2d at 986. As the appeal of the October 7 order was no longer pending, on remand, the Court of Appeals directed the trial court to determine whether to confirm or set aside the asset sale. *Id.* On May 6, 2013, the State Court entered an order confirming the sale ("Sale Confirmation Order"). [Doc. # 141, Ex. P]. Horvath, his spouse Terrie Horvath and Nancy Packo, LLC, an entity owned by the Horvaths, filed a timely appeal of that order, which remains pending. [*Id.*, Ex. Q].

## III. Horvath's Involuntary Bankruptcy Case

On October 7, 2013, Horvath's former counsel in State Court and his accountant commenced an involuntary Chapter 7 bankruptcy case against him to collect their professional fees. Horvath scheduled as assets on his Schedule B filed on February 28, 2014, his fifty percent interest in the Packo Companies, the appeal of the Sale Confirmation Order and the "Tony Packo's Recipe "Ingredient" List," but did not schedule the recipes. [Case No. 13-34137, Doc. # 43, p. 2-3]. At the March 10, 2014, meeting of creditors, Horvath testified that the recipes were sold but that the ingredient list is separate from the recipes. [*Id.,* Doc. # 94, Ex. B., p. 14-15]. Nevertheless, on February 10, 2015, he amended his schedules to include the following: "[a]ssets from the Estate of Nancy Packo Horvath - Including, but not limited to, the License Agreement. . . and any rights arising from that agreement." [*Id.*, Doc. # 119, p.4]. At his Bankruptcy Rule 2004 examination on April 30, 2015, Horvath testified that this referred to the Tony Packo's hot dog sauce and chili soup recipes and that the recipes are either owned by him or the NPH Trust. [*Id.*, Doc. # 168, pp. 66, 104].

## IV. Probate Court Proceedings

In 2003, after NPH's death, Horvath applied for a summary release of NPH's estate from administration in the Probate Court of Lucas County, Ohio ("Probate Court"). [Doc. # 141, Ex. A]. On April 27, 2015, Horvath filed an application for authority to administer the NPH estate. [Case No. 13-34137, Doc. # 195-1, pp. 462, 475 & Doc. # 195-7]. Pursuant to the provisions of her Last Will and Testament, NPH bequeathed all of her tangible personal property to Horvath, and all of the remainder of her property to Horvath, as trustee of the NPH Trust, and nominated Horvath to be the executor of her estate. [Doc. # 1, ¶ 33 and attached Ex. F and ¶ 33 of Doc. ## 42, 42, 45 & 76]. Notwithstanding his pending Chapter 7 bankruptcy case and his amended Schedule B filed therein, on May 1, 2015, Horvath, as executor, filed an Inventory and Appraisal and Schedule of Assets in the Probate Court, describing the following as the only assets of the probate estate:

> INTANGIBLE PERSONAL PROPERTY
> Pursuant to (without limitation) the September 10, 2002 Term Sheet, the RECIPES (including, but not limited to the chili soup and hot dog sauce used by Tony Packo's, Inc. in it restaurant, catering and wholesale food businesses, and all "improvements or derivations therefrom" per the October 31, 2002 License Agreement) and all other INTELLECTUAL PROPERTY used in the operation of Tony Packo's, Inc.'s business, and all of the RECIPES AND FORMULAS referenced in the June 10, 2002 Affidavit of Nancy Packo Horvath.

[Doc. # 1, ¶ 66 and attached Ex. P and ¶ 66 of Doc. ## 42,43,45, & 76]. Although the Trustee had filed a notice of appearance in the probate proceeding on March 20, 2015, [Doc. # 141, Ex. T], the only notice of hearing on approval of the inventory was published in the Toledo Legal News on May 11 and 12, 2015, [Case No. 13-34137, Doc. # 195-1, pp. 493-95]. The Trustee did not file an objection to the inventory and, on May 27, 2015, the Probate Court entered an Order Approving Inventory and Appraisal. [Doc. # 23, Keller Aff., ¶¶ 21-22 and attached Ex. 3].

On May 4, 2015, Horvath, as executor of the NPH Estate, signed a document that purports to transfer "for value received" the recipes, formulas and other intellectual property to Horvath, as trustee of the NPH Trust. [Doc. # 1, ¶ 67 and attached Ex. Q and ¶ 67 of Doc. ## 42, 43, 45, & 76]. The trust document shows that Horvath is the primary beneficiary of the NPH Trust, [Doc. # 1, ¶ 4 and attached Ex. A and ¶ 4 of Doc. ## 42,43,45, & 76], notwithstanding his testimony at his Bankruptcy Rule 2004 examination that he is the sole beneficiary, [Case No. 13-34137, Doc. # 195-1, p. 466].

Additional facts to the extent relevant are discussed in the court's analysis below.

## I. Jurisdiction and Authority to Hear and Determine Issues Before This Court

The court must initially determine its jurisdiction and authority to hear and determine the claims, counterclaims and cross-claims asserted in this proceeding. *See Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010) (stating that federal courts have "an independent obligation to investigate and police the boundaries of our own jurisdiction"). The source of the bankruptcy court's subject matter jurisdiction is 28 U.S.C. §§ 1334. *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1140 (6th Cir. 1991); *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004). Pursuant to § 1334, the district courts have jurisdiction over "cases under title 11" and proceedings "arising under," "arising in a case under," or "related to a case under" title 11. 28 U.S.C. § 1334(a) and (b). The district courts routinely refer this jurisdiction over bankruptcy cases and proceedings to the bankruptcy courts. *See* 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Bankruptcy courts may then hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11 that are so referred. 28 U.S.C. § 157(b). Courts have recognized that the word "proceedings, " as used in § 157(b), must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. *See, e.g., Beneficial Nat'l Bank, USA v. Best Receptions Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 945 (Bankr. E.D. Tenn. 1998) (citing *Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420, 425 (D. Mass. 1995)); *Bliss Techs., Inc. v. HMI Indus., Inc. (In re Bliss Technologies, Inc.)*, 307 B.R. 598, 603 (Bankr. E.D. Mich. 2004); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 116 (N.D. Tex. 2006).

The Trustee moves for summary judgment on her complaint. In Count I, she seeks declaratory relief as to the bankruptcy estate's interest in "Recipes," which she defines as the recipes written down by NPH's father in the Recipe Notebook and any and all interests claimed by NPH "with respect to any and all recipes in, derived from, based upon, etc. the Recipe Notebook that were used by any of the Packo Entities and/or their predecessors at any time, including but not limited to recipes for chili soup and hot dog sauce." [Doc. # 1, Complaint, ¶ 17]. Defendants each move for summary judgment on their counterclaims and cross-claims seeking declarations regarding the ownership of certain personal property that includes the Recipes. In Count I of the TP Defendants' counterclaim and Count I of their cross-claim against the RLH Defendants and the NPH Defendants, they seek a declaration that TPIP is the sole owner of the Recipes and "all intellectual property" claimed by NPH or any of the defendants "with respect to any and all recipes and formulas used by any of the Packo Entities and/or their predecessors at any time" and that the only interest

8

of any person or entity in the Recipes and the above-referenced intellectual property is whatever rights exist in the appeal of the Sale Confirmation Order in the Receivership proceeding. [Doc. #45, Counterclaim, ¶ 7, Cross-claim, ¶ 7]. In their counterclaim and the cross-claims against the RLH Defendants and the TP Defendants, the NPH Defendants seek a declaration that "all of the recipes, formulas and intellectual property used in the operation of TPI's business as referenced in (without limitation) the NPH Affidavit, the Term Sheet and the License Agreement" are the sole and exclusive property of the NPH Trust.[4] [Doc. #42, p. 34-36; Doc. #43, pp. 34-36]. In their counterclaim and cross-claim against the TP Defendants, the RLH Defendants seek the same declaration sought by the NPH Defendants. [Doc. # 76, p. 35-36].

Count I of the Trustee's complaint, and the counterclaims of each of the Defendants to the extent seeking a declaration as to ownership of recipes and intellectual property, are core proceedings that the court may hear and determine in that each requires the court to determine what property constitutes property of the bankruptcy estate. 11 U.S.C. § 157(b)(1) and (2)(A). At the very least, because property of a bankruptcy estate has no existence until a bankruptcy case is commenced, the issue of whether property is property of the estate presents a matter 'arising in' a bankruptcy case. *Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries LLC)*, 475 B.R. 9, 29 (S.D.N.Y. 2012). And while the Defendants' cross-claims seeking declarations that they own the property at issue are not core proceedings in that they seek judgment against the other Defendants, those claims are at least related to the bankruptcy case since such determinations "could conceivably have [an] effect on the estate being administered in bankruptcy." *Wolverine Radio Co., Inc.*, 930 F.2d at 1142 (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)). In their respective summary judgment motions, Defendants each ask the court to enter judgment on their cross-claims and thus consent to the court hearing and determining those claims. 11 U.S.C. § 157(c)(2); *Executive Benefits Ins. Agency v. Arkison*, – U.S. –, 134 S. Ct. 2165, 2174 (2014) (explaining that "§ 157 permits a bankruptcy court to adjudicate a claim to final judgment in two circumstances—in core proceedings . . .and in non-core proceedings 'with the consent of all the parties'").

The court notes that the Trustee seeks only a declaration regarding ownership of Recipes, as defined by her to mean the Recipe Notebook and all recipes in or derived from the Recipe Notebook that were used by any of the Packo Entities or their predecessors at any time, including but not limited to recipes for chili soup and hot dog sauce. Defendants each seek a declaration wider in scope. They seek declarations regarding ownership of certain intellectual property and, with respect to the NPH Defendants and the

---

[4] The NPH Estate and the RLH Defendants also seek a declaration that such property was the sole and exclusive property of the NPH Estate until assigned to the NPH Trust on May 4, 2015. [Doc. # 42, p. 34-36; Doc # 76, p. 35-36].

9

RLH Defendants, all recipes used in the operation of TPI's business as referenced in the NPH Affidavit, the Term Sheet and the License Agreement. The court finds Horvath's inclusion of all assets from the NPH estate on his amended Schedule B and his inclusion on the inventory filed in the NPH estate of all recipes and intellectual property used by Tony Packo's, Inc. puts at issue whether not only the Recipes as defined in the Trustee's complaint but also the intellectual property and all recipes used in the operation of TPI's business are property of the bankruptcy estate.

The Trustee also moves for summary judgment on an avoidance claim brought under 11 U.S.C. § 549 that is included in Count I of her complaint and on Count II of her complaint, which seeks an order requiring Horvath, in any capacity, to turn over the Recipe Notebook to her, as well as all documents that contain recipes that relate in any way to the Recipe Notebook. [Doc. # 1, pp. 23-24]. The TP Defendants move for summary judgment on Count II of their counterclaim, which seeks a judgment requiring the Trustee to turn over such recipe documents to TPIP, and on Count III, which seeks a declaration that the Trustee is required, without further compensation, to execute any documents the TP Defendants require be signed in order to transfer to the TP Defendants any interests of Horvath or the bankruptcy estate in the Recipes (including the Recipe Notebook). [Doc. # 45, pp. 7-8]. The Trustee has also moved for summary judgment on Count III of her complaint, which seeks an order enjoining Horvath, in any capacity, from taking any action to convey, transfer, assign, encumber, or to take any other action with respect to the Recipes, [*see* Doc. # 1, pp. 24-25]. The court concludes that it has jurisdiction over all of the foregoing since the claims seeking turnover to the Trustee are matters concerning turn over of property she alleges to be property of the estate and the remaining claims are matters that could conceivably affect the administration of the estate and thus are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(A) & (E).

The court finds, however, that it lacks subject matter jurisdiction over the RLH Defendants' and the NPH Defendants' cross-claims seeking a declaration that the TP Defendants' use of any of the recipes and intellectual property at issue in this proceeding was unlawful and adverse to the NPH Defendants' rights to that property and over the TP Defendants' cross-claim against Horvath seeking turnover to TPIP of the Recipe Notebook and all recipe documents. A determination as to whether the TP Defendants' use of the property at issue was unlawful and adverse to the NPH Defendants' rights would have no conceivable effect on Horvath's bankruptcy estate and, thus, is not related to the bankruptcy case. *See Wolverine Radio Co.*, *Inc.*, 930 F.2d at 1142.

With respect to the TP Defendants' claim seeking turnover of the Recipe Notebook and recipe

10

documents from Horvath and the NPH Defendants, the court initially notes that the "turnover" claim is not requesting turnover of property of the estate as contemplated in § 157(b)(2)(E) but, rather, turnover of property that the TP Defendants allege is owned by TPIP. The court finds that the outcome of the TP Defendants' claim would have no conceivable effect on Horvath's bankruptcy estate and, as such, is not related to the bankruptcy case.

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## III. Overview of Issues

Both the Trustee and the TP Defendants argue that the State Court's Recipe Order is binding on the

11

RLH Defendants and the NPH Defendants and thus bars their claims of ownership of the recipes at issue under either preclusion principles or the Rooker Feldman doctrine. Alternatively, they both argue that Horvath is judicially estopped from disputing that any interest he may have in the recipes belongs to the bankruptcy estate. The TP Defendants also argue that the RPH Defendants' and the NPH Defendants' claims are barred due to Horvath's "unclean hands," fraud, waiver, and laches. Based upon these arguments, the Trustee and the TP Defendants argue that Horvath's only interest at the time the underlying bankruptcy case was commenced, and thus the Trustee's only interest, in the recipes is an interest in the appeal of the State Court's Sale Confirmation Order.

Alternatively, the Trustee and the TP Defendants argue that the recipes are property of the bankruptcy estate under one of two theories: (1) if the recipes are intangible personal property and properly transferred to the NPH Trust, the Trust is not an enforceable spendthrift trust, and the NPH Trust assets are thus property of the bankruptcy estate, or (2) the recipes are tangible personal property bequeathed to Horvath individually such that any interest in the recipes became property of the bankruptcy estate.[5]

The RLH Defendants and the NPH Defendants, for their part, argue that the State Court lacked jurisdiction to enter the Recipe Order and that, even if properly entered, there are no bars to the NPH Defendants pursuing their claims of ownership of the recipes. They argue then that the Recipe Order contemplates that the TP Defendants would secure an instrument of conveyance in accordance with paragraph 6.2 of the License Agreement from NPH's successor. Because the TP Defendants did not obtain such instrument of conveyance, the RLH Defendants and the NPH Defendants argue that ownership of the recipes was not transferred to the TP Defendants but, rather, remained with NPH's successor, namely, Horvath, either as executor of the NPH Estate or as trustee of the NPH Trust. The RLH Defendants and the NPH Defendants also argue that the Trustee has failed to meet her burden with respect to her claim for injunctive relief.

Based upon the forgoing arguments, the parties each move for summary judgment in their favor on all of their respective claims, counterclaims and cross-claims and on their opposing parties' claims, counterclaims and cross-claims. For the reasons that follow, the court finds that the the Trustee and the TP Defendants are entitled to judgment as a matter of law that the State Court's Recipe Order and Sale

---

[5] The Trustee and the TP Defendants also argue that the post-petition transfer of the recipes to the NPH Estate and NPH Trust was a violation of the automatic stay and is thus void. However, neither have alleged such a claim in their pleadings filed in this proceeding. *See* Fed. R. Bankr. P. 7001(2) and (9). Neither have requested to amend their pleadings and, to the extent it is even appropriate to do so on summary judgment, the court declines to *sua sponte* deem them amended and thus, does not address those claims.

Confirmation Order bar the ownership counterclaims and cross-claims of the RLH Defendants and the NPH Defendants and that there is no genuine issue for trial regarding the parties' respective interests in the recipes and intellectual property used in TPI's business. The TP Defendants are entitled to judgment declaring that TPIP owns the recipes and intellectual property, subject only to the rights, if any, of any party in the appeal of the Sale Confirmation Order. The Court also finds that the undisputed evidence shows that the Trustee is entitled to summary judgment on her claim for injunctive relief, although such relief will be limited as discussed below.

## IV. RLH Defendants' and NPH Defendants' Counterclaims and Cross-Claims Regarding Ownership

The RLH Defendants and the NPH Defendants seek summary judgment on their counterclaims and cross-claims, which allege that the recipes, formulas and intellectual property used in the operation of TPI's business were the exclusive property of the NPH Estate until assigned to the NPH Trust. The basis of their claims and their defense against the TP Defendants' and the Trustee's claims is their assertion that NPH was the owner of such property before her death in 2003 as allegedly shown by the NPH Affidavit, the Term Sheet and the License Agreement. At best, however, a factual dispute exists as to whether NPH had any ownership interest in the recipes for products sold by TPI.

The NPH Affidavit was executed in June 2002 and states that, in 1962, her father, Tony Packo, Sr., wrote down all of his recipes in a notebook that were used for the entire menu at Tony Packo's Café and gave them to NPH with instructions that she was to be the sole keeper and owner of his recipes and formulas. [Doc. # 42, Ex. 1]. Shortly thereafter, in July 2002, she commenced an action in state court against TPI, Packo Jr., and Packo III by filing a verified complaint that alleges, among other things, that Packo Sr. gave her "all of his food recipes for the sausage, pickles and peppers and the sauce" with instructions that she was to be the sole keeper of the recipes for the family business. [Doc. # 155, Ex. 1, ¶ 13]. These averments, however, are contradicted by agreements entered into between TPI and Jamie Farr in 1985, which states that TPI "is the originator, creator and promoter of a canned hot dog sauce called "Tony Packo's Hot Dog Sauce," [Doc. # 147, Ex. A, p.1], and between TPI and Paramount Foods, Inc., in 1984, which is signed by NPH and states that TPI "has developed and is the owner of a trade secret recipe for the food product identified as 'Tony Packo's Hot Dog Sauce,'" [*id.*, Ex. B, p. 1].

While the NPH Defendants also rely upon the License Agreement and Term Sheet, neither document acknowledges that NPH actually owned the recipes. The Term Sheet refers to NPH's interest *if any*, and the License Agreement states only that NPH *claims* to own the hot dog sauce and chili soup recipes. As the Trustee argues, the fact that the License Agreement required NPH to transfer any interest she might have

13

in those recipes without compensation to a buyer of TPI's assets and gave TPI the exclusive rights to use and sub-license those recipes supports a conclusion that its provisions were simply a part of the settlement of the 2002 Litigation amongst family members rather than an acknowledgment as to actual ownership of those recipes.

In any event, as discussed below, the preclusive effect of the State Court's Recipe Order bars the RLH Defendants' and the NPH Defendants' ownership claims with respect to any recipe used for products sold at any time by the Receivership Entities.

## V. Preclusion Issues

At issue is the preclusive effect of the December 7, 2011, Recipe Order as incorporated into the May 6, 2013, Sale Confirmation Order entered in the receivership proceeding in State Court. The Trustee and the TP Defendants argue that the State Court orders preclude the NPH Defendants from asserting ownership of the Recipes. In determining whether the prior judgment should be given preclusive effect in a federal action, a federal court must apply the law of the state in which the prior judgment was rendered. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). Thus, in this case, the court must apply Ohio issue preclusion principles.

Under Ohio law, the doctrine of res judicata encompasses the related concepts of "issue preclusion" and "claim preclusion." *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St. 3d 59, 61 (2007). Res judicata principles are applied to both judgments *in rem* and *in personam*. With respect to judgments *in personam,* claim preclusion principles provide that "a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction . . . is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Grava v. Parkman Twp.,* 73 Ohio St. 3d 379, 381 (1995). In contrast, issue preclusion, or collateral estoppel, "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. . . even if the causes of action differ." *O'Nesti*, 113 Ohio St. 3d at 61.

While both claim preclusion and issue preclusion principles require the previous proceeding to be between the same parties or their privies where the prior judgment is *in personam*, a prior judgment *in rem* is res judicata as to all issues decided and all issues that the court might have decided "and as to all persons having an interest in the subject-matter." *State ex. rel. Brophy v. City of Lakewood*, 139 Ohio St. 633, 635 (1942); *Garrett v. Richfield Twp.*, 45 Ohio App. 2d 285, 287 (1973); *Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St. 3d 260, 263 (1987) (citing *Brophy* and stating that "a judgment *in rem,*

14

cannot be collaterally attacked"); *Alltop v. Ohio Dept. of Nat. Resources*, Case No. 90 C.A 75, 1990 WL 162703, \*4; 1990 Ohio App. LEXIS 4652, \*10 (Ohio App. Oct. 18, 1990) (finding that if prior judgment was *in rem*, "all persons are bound by it regardless of their status as parties"). "The binding effect of a judgment in rem against the *whole world* prevails as to the res or status within the jurisdiction of the court." *Brophy*, 139 Ohio St. at 636.

For the reasons that follow, the court finds that the Recipe Order and Sale Confirmation Order, which incorporated the Recipe Order, was rendered by a court of competent jurisdiction and that it is res judicata as to Horvath and his privies under claim preclusion principles or, alternatively, is res judicata as to the whole world as an *in rem* judgment. In either case, the res judicata effect of the Recipe Order is subject to any resolution of the pending appeal of the Sale Confirmation Order in State Court.

### A. State Court Jurisdiction

The RLH Defendants and the NPH Defendants argue that (1) the State Court lacked jurisdiction to render the December 7, 2011, Recipe Order since Horvath's appeal of the October 7, 2011 order directing the Receiver to accept the offer of TP Foods and negotiate an asset purchase agreement was still pending when the Recipe Order was entered, and that (2) the Sale Confirmation Order did not cure the alleged jurisdictional defect. The Trustee argues that any issue regarding the State Court's lack of jurisdiction is not an issue that should be decided by this court. However, because Ohio courts would not give preclusive effect to a judgment rendered by a court without subject matter jurisdiction, *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 664 (6th Cir. 1990) (applying Ohio law and finding that it was error to give preclusive effect to state court judgment since the state court lacked subject matter jurisdiction); *State ex rel. Rose v. Ohio Dep't of Rehab. & Corr.*, 91 Ohio St. 3d 453, 455 (2001) (stating that res judicata "presupposes a judgment entered by a court of competent jurisdiction"), in order to give preclusive effect to the Recipe Order, this court must find that the State Court had jurisdiction to render a final judgment with respect to that order.

Relying on the the Sixth District Ohio Court of Appeals' decision dated January 11, 2013, it is the RLH Defendants' and the NPH Defendants' position that the Court of Appeals conclusively determined that the trial court lacked jurisdiction when the December 7, 2011, Recipe Order was rendered. They argue that the Court of Appeals held that the trial court lacked jurisdiction between November 3, 2011, which is the date Horvath perfected his appeal of the October 7, 2011, order, through January 5, 2012, the date the appeal was dismissed. However, this court does not read the January 11 opinion so broadly.

The October 7, 2011, order from which Horvath appealed was an order directing the Receiver to

15-03058-maw    Doc 172    FILED 10/07/16    ENTERED 10/07/16 09:57:09    Page 15 of 28

accept the offer submitted by TP Foods rather than the offer submitted by Nancy Packo, LLC, which was owned by Horvath and his wife, and to negotiate an asset purchase agreement with TP Foods. *Horvath v. Packo*, 985 N.E.2d 966, 969 (2013). Notwithstanding perfection of Horvath's appeal, the trial court proceeded to approve the asset purchase agreement on December 19, 2011, and entered an order confirming the sale to TP Foods on December 22, 2011.

In concluding that the trial court lacked jurisdiction to enter the December 19 and 22 orders, the Court of Appeals relied on the following principle set forth by the Ohio Supreme Court in *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga County Court of Common Pleas*, 129 Ohio St. 3d 30 (2011): "once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *Horvath*, 985 N.E.2d at 975, 980. Thus, because the issue on appeal was the propriety of the trial court's decision to direct the Receiver to accept TP Foods' offer as opposed to that of Nancy Packo, LLC, "on the authority of *Electronic Classroom*," the Court of Appeals held that "the December 19 and 22, 2011 orders were entered without jurisdiction." *Id.*

The decision of the Court of Appeals makes no mention of the December 7 Recipe Order. This court finds the Recipe Order distinguishable from the December 19 and 22 orders. While those orders approved the APA and confirmed the sale of assets to TPIP and were thus inconsistent with the Court of Appeals' jurisdiction to address the issue that was the subject of the appeal, the Recipe Order was simply an order determining whether certain assets constitute assets of the Receivership. That determination was not inconsistent with the jurisdiction of the Court of Appeals to reverse, modify, or affirm the October 7, 2011, order directing the Receiver to accept TP Foods' offer, rather than the offer of Nancy Packo, LLC. Accordingly, the trial court maintained jurisdiction to enter the Recipe Order determining assets of the Receivership notwithstanding the pending appeal.

In addressing the effect of its January 11, 2013, decision, the Court of Appeals explained that the sale "closing" occurred after it had dismissed Horvath's appeal from the October 7, 2011, order, "thereby removing any jurisdictional defects that prevented the trial court from proceeding." *Id*. at 986. The Court of Appeals noted that "the confirmation of a judicial sale relates back to the day of the sale and passes title as of that day," *id*. at 981, n.7, and instructed that, "on remand, the trial court must decide whether to confirm or set aside the asset sale," *id*. at 986. Thus, the State Court had jurisdiction to enter the Sale Confirmation Order on May 6, 2013, as no further appeal was then pending.

16

**B. Res Judicata/Claim Preclusion**

Under Ohio law, a claim is barred by claim preclusion principles if the following elements are present: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 123 (2006).

In this case, the Recipe Order became final no later than May 6, 2013, on entry of the Sale Confirmation Order. *See Horvath v. Packo*, 985 N.E.2d at 981 (stating that an order of confirmation is a final order that "becomes dispositive as to the propriety of the sale and the sale confirmation procedures"); *Grover v. Bartsch*, 2006-Ohio-6115, ¶ 9, 170 Ohio App. 3d 188, 193 (2006) ("Interlocutory orders . . .are merged into the final judgment."). And, as previously determined, the State Court had jurisdiction to enter both the Recipe Order and Sale Confirmation Order. Thus, the first element under *Portage County Board of Commissioners* is satisfied. The fourth element is satisfied in that ownership claims in this proceeding arise out of the sale of Receivership assets, as well as the License Agreement, that were the subject matter of the prior State Court proceeding. And as discussed below, the second and third elements are also satisfied.

The third element requires that this proceeding involves claims that were or could have been litigated in the first action. At issue in the State Court receivership proceeding were claims of ownership of the Recipes and other intellectual property. The claims in this proceeding are also claims of ownership of the Recipes and intellectual property, which, as discussed above, could have been litigated in the State Court proceeding. The fact that the RLH Defendants and the NPH Defendants may now be presenting evidence or grounds not presented in the first proceeding does not defeat application of claim preclusion principles. Restatement 2d of Judgments § 25 (expressly adopted in *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995)).

The second element, that this proceeding involve the same parties or their privies as the prior state court proceeding, is also satisfied. The Ohio Supreme Court has recognized that the concept of privity for purposes of res judicata is "somewhat amorphous." *Brown v. City of Dayton*, 89 Ohio St. 3d 245, 248 (2000). While a contractual or beneficiary relationship can be sufficient, neither is required. *Id.* In *Brown,* the court found that a broader definition is warranted. *Id.* The court explained that, "[a]s a general matter, privity is merely a word used to say that the relationship between the one who is a party on the record and

17

another is close enough to include that other within the *res judicata." Id.*

The Ohio Supreme Court has recognized other instances of privity or exceptions to the same party requirement. Privity may be established when there is "an interest in the result of and active participation in the original lawsuit" or when there is "'a mutuality of interest, including an identity of desired result,'" where the person taking advantage of the judgment would have been bound by it had the result been the opposite. *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 121 Ohio St. 3d 526, 532 (2009)(quoting. *Kirkhart v. Keiper,* 101 Ohio St. 3d 377, 379 (2004), quoting *Brown,* 89 Ohio St. 3d at 248). In addition, "a person is in privity with another if he or she succeeds to an estate or an interest formerly held by another." *Thompson v. Wing,* 70 Ohio St. 3d 176, 184 (1994). The Ohio Supreme Court has also held that preclusion principles "'appl[y] likewise to those in privity with the litigants and to *those who could have entered the proceeding but did not avail themselves of the opportunity.'" Id.* (emphasis in original) (quoting *Howell v. Richardson*, 45 Ohio St. 3d 365, 367 (1989)).

In this case, while Horvath was a party and actively participated with counsel in the Receivership proceeding and in the proceeding to determine ownership of the Recipes and intellectual property, the RLH Defendants and the NPH Defendants argue that res judicata does not apply to the NPH Defendants since they were not parties to the prior proceeding and are not in privity with Horvath. The court disagrees.

According to the RLH Defendants and the NPH Defendants, the NPH Defendants and Horvath had different interests that would lead to different results and they did not have the required mutuality of interest. Their argument is that Horvath and the NPH Defendants had competing claims if each claimed ownership of the Recipes on their own behalf. However, that argument assumes that Horvath asserted or would have asserted claims of ownership other than as trustee and beneficiary of the NPH Trust and executor and beneficiary of the NPH Estate. That did not occur. That there is and was an identity of desired result is evident by the fact that Horvath and the NPH Defendants seek the same determination by the court in this proceeding, *i.e.*, that NPH's will required the NPH Estate to assign the Recipes to the NPH Trust, of which Horvath is the primary beneficiary, and that the Receivership entities did not own the Recipes.

Given the fact that TP Foods was the party that filed the motion asking the state court to determine the ownership of the Recipes, it would have been bound by the state court's judgment had the result been the opposite. The Trustee would have likewise been bound since under 11 U.S.C. § 541(a) she stands in the shoes of Horvath, the debtor in the underlying bankruptcy case, and is thus in privity with Horvath as a successor to any interest he might have in the Recipes. The court finds therefore that privity exists between Horvath and the NPH Defendants based upon a mutuality of interest amongst the parties.

18

Nevertheless, the RLH Defendants and the NPH Defendants also argue that privity could not exist between Horvath and the NPH Estate because the NPH Estate did not exist at the time the Recipe Order and Sale Confirmation Order were entered. But the fact that Horvath obtained summary release from administration of NPH's estate such that there was no ongoing probate proceeding is of no moment. Horvath was named as executor and beneficiary under NPH's will. Any interest in the Recipes that NPH may have had at the time of her death was part of the decedent's estate from which Horvath had obtained the summary release. The court thus finds Horvath's relationship with the NPH Estate close enough to come within the meaning of being in privity for purposes of res judicata. *Cf. Thompson*, 70 Ohio St. 3d at 184 (finding the relationship close enough such that privity existed between decedent, who had brought a prior personal injury action against the defendants, and her beneficiaries in wrongful death action brought by representative of decedent's estate against the same defendants). To hold otherwise would allow an executor/beneficiary a strategic advantage simply by waiting to see the outcome of a proceeding before commencing probate proceedings. The court similarly finds that Horvath's position as trustee and primary beneficiary of the NPH Trust is itself a close enough relationship with Horvath individually to find privity between them.

Furthermore, as the TP Defendants argue, as trustee of the NPH Trust, Horvath had the requisite knowledge of the State Court proceedings and had ample opportunity to intervene in the State Court litigation on behalf of the NPH Trust to protect its claimed ownership rights. He also had ample opportunity to cause the NPH Estate to be opened or reopened, as the case may be, to permit it to intervene in the State Court proceeding. Because preclusion principles apply to those who could have entered the proceeding but did not avail themselves of the opportunity, *Thompson*, 70 Ohio St. 3d at 184, and because the court finds Horvath was in privity with the NPH Defendants, the court finds that the second element under *Portage County Board of Commissioners,* that this proceeding involve the same parties or their privies, is satisfied.

The Trustee and the TP Defendants have met their burden of proving each element required for the application of claim preclusion. Claim preclusion principles thus apply to the RLH Defendants' and the NPH Defendants' claims of ownership of intellectual property and recipes used in the business of the Receivership Entities, including recipes for chili soup and hot dog sauce

Although the parties have not addressed the issue, even if privity does not exist, an *in rem* judgment is, as discussed above, res judicata as to all issues decided and all issues that the court might have decided and as to all persons having an interest in the *res*. *Brophy*, 139 Ohio St. at 635. It cannot be collaterally attacked. *Set Prods., Inc.,* 31 Ohio St. 3d at 263.

19

An *"in rem"* proceeding is defined as one "in which essential purpose of suit is to determine title to or to affect interests in specific property located within territory over which court has jurisdiction." *Blacks Law Dictionary* 793 (6th ed. 1990); *see Capital City Lumber Co. v. Ellerbrock*, 7 Ohio App. 2d 202, 207 (1966) (explaining that an *in rem* proceeding "is brought to determine the status of the thing itself" (citing *Cross v. Armstrong*, 44 Ohio St. 613, 624 -25 (1887)). A "judgment *in rem*" is defined as

> An adjudication pronounced upon the status of some particular thing or subject matter, by a tribunal having competent authority. It is founded on proceeding instituted against or on some thing or subject matter whose status or condition is to be determined, or one brought to enforce a right in the thing itself.

*Blacks Law Dictionary* 845 (6th ed. 1990) (internal citations omitted). Courts have recognized receivership proceedings or proceedings in the nature thereof as *in rem* proceedings. *See Third Nat. Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 323, n.17 (1977) (stating that a state receivership is one way in which a state court might exercise *in rem* jurisdiction over the property of a debtor); *Gillis v. Keystone Mut. Cas. Co.,* 172 F.2d 826, 828-29 (6th Cir. 1949) (stating that suits brought to liquidate estates, "similar to receivership proceedings in federal court," and suits of like nature are said to be *in rem*); *People ex rel. White v. Travnick*, 806 N.E.2d 270, 277 (Ill. App. 2004) ("a receivership is an *in rem* proceeding"); *Woods v. Consol. Newspapers*, 122 S.W.2d 112, 113 (Ky. App. 1938) (same).

In this case, the State Court appointed a receiver for all of the real and personal property of the Packo Companies, ordered him to take possession and control of all such assets, including general intangibles, and ordered all such assets placed in *custodia legis.* The receiver was authorized to negotiate and effect an orderly sale or transfer of all or any portion of the assets in order to enforce Fifth Third Bank's rights in those assets and as a judgment creditor. The Recipe Order entered by the State Court on December 7, 2011, was a determination regarding the Receivership Entities' ownership of specific property, namely, recipes used in the operation of the Receivership Entities, trade names and other intellectual property. As an adjudication upon the status of ownership of that property, the Recipe Order is a judgment *in rem.* As a judgment *in rem*, the Recipe Order is res judicata as to all issues decided or that could have been decided, and all persons and entities are bound by it regardless of their status as parties.

Nevertheless, the RLH Defendants and the NPH Defendants argue further that the Recipe Order itself, and the APA entered into thereafter, required separate conveyance by Horvath, as NPH's successor, of the recipes that were the subject of the License Agreement. Their argument is based on the fact that the Recipe Order provides that the License Agreement is a valid and enforceable contract and is binding on all successors of NPH and on section 6.2 of the License Agreement, which requires NPH's successor to execute

instruments of conveyance without further compensation in the event a third-party requires conveyance of such interest, "if any," in the recipes as a condition of consummating the purchase of substantially all of TPI's assets. However, the Recipe Order clearly states that the Recipes, including recipes for chili soup and hot dog sauce that are the subject of the License Agreement, are exclusive assets of the Receivership Entities and thus assets of the Receivership and that the Receiver had the "sole, exclusive and unrestricted right to sell *and transfer*" all Recipes to the highest and best bidder "free and clear of all liens, claims or encumbrances." [Doc. # 141, Ex. D. pp. 2-3 (emphasis added)]. The plain language of the Recipe Order requires that the court reject the RLH Defendants' and the NPH Defendants' argument.

Likewise, the terms of the APA did not require conveyance of the Recipes by NPH's successor in order to consummate the sale. The RLH Defendants and the NPH Defendants rely upon § 3.8(q) and § 6.6 of the APA. Section 3.8(q) provides that, as a condition to closing the sale, NPH's successors "shall have conveyed all of their interest, *if any*, in the recipes" that are the subject of the License Agreement "*or* Purchaser shall have determined in its sole discretion that such persons have no remaining rights or interests in such recipes." [*Id.*, Ex. K, APA § 3.8(q) (emphasis added)]. Similarly, § 6.6 of the APA provides that any documentation evidencing the conveyance of such interest "*or that no such interest exists* shall be subject to Purchaser's review and approval." [*Id.* at § 6.6 (emphasis added)]. Given that the APA and closing of the sale of assets occurred after entry of the Recipe Order's determination that the recipes referred to in the License Agreement were assets of the Receivership and that the Receiver, not NPH's successor, had the sole right to transfer the recipes, it cannot be said that the APA required NPH's successors to convey their claimed interests in the recipes in order to effectuate a valid transfer. In any event, such a requirement would be contrary to the clear provisions of the Recipe Order.

Finally, in an attempt to avoid the preclusive effect of the December 7, 2011, Recipe Order, the NPH Defendants argue that the Sale Confirmation Order did not define the "Assets" to be sold to include the assets that were the subject of the Recipe Order, but instead defined them with reference to the state court's earlier October 7, 2011, order directing the Receiver to accept the offer of TP Foods and, thus, that the Sale Confirmation Order did not confirm the sale of any assets that were the subject of the Recipe Order that was entered two months later. This argument has no merit.

The findings of fact in the Sale Confirmation Order include the following:

On October 7, 2011, . . . this Court entered an Order directing the Receiver to accept an offer submitted by TP Foods, LLC, . . . for the purchase of substantially all of the assets and properties of the Packo Companies (except for certain excluded assets and properties) (the "Assets")

. . . .

21

On December 7, 2011, this Court issued an Order finding that the recipes, tradenames and other intellectual property referenced in the Order are the property of the Packo Companies and the Receivership Estate.

[Doc. # 141, Ex. P, ¶¶ 4, 6]. The October 7, 2011, order states that the matter before the court was the Receiver's Second Amended Report and Recommendation Regarding Submitted Offers. [Doc. # 158, Ex. A]. The Receiver's Second Amended Report details the offers submitted, including that of TP Foods. [*Id.*, Ex. B]. The Receiver set forth a detailed list of assets TP Foods was offering to purchase, which included "[a]ll trade names, trademarks, material subject to copyright and other intellectual property" used in the businesses of the Receivership Entities and "all rights of ownership and use with respect to recipes for products sold or licensed for sale and recipe blends." [*Id.* at 8]. The Receiver also set forth TP Foods' conditions to close the sale, which included that the Receivership Entities own and have the sole and unrestricted right to transfer ownership of the recipes to it. [*Id.* at 9]. The recipes used for products sold by the Receivership Entities were not excluded as assets to be purchased. The December 7, 2011, Recipe Order later confirmed that TP Foods had "conditioned its purchase of the Receivership assets upon it receiving sole and exclusive rights to and ownership of" the recipes that were the subject of that order. [Doc. # 141, Ex. D, ¶ 3]. There is no genuine dispute of fact that the sale of assets confirmed by the Sale Confirmation Order included the assets that were the subject of the Recipe Order.

### C. No Preclusive Effect of the State Court Approval of Inventory

The evidence shows that Horvath scheduled as assets in the NPH Estate inventory filed in Probate Court recipes, including recipes for chili soup and hot dog sauce per the License Agreement, and other intellectual property that were used in the operation of TPI's business and that, with no exceptions having been filed, the Probate Court entered an order approving the inventory on May 27, 2015. However, this court agrees with the Trustee's contention that the Probate Court's order has no preclusive effect in this proceeding.

Although exceptions to an inventory filed in Probate Court may be filed by "any person interested in the estate or in any of the property included in the inventory," Ohio Rev. Code § 2115.16, the Ohio Supreme Court has explained that simply serving certain persons with notice of the hearing on the inventory does not make those persons parties to the hearing and thereby bound by the determination of the Probate Court, *Cole v. Ottawa Home and Sav. Ass'n*, 18 Ohio St. 2d 1, 6 (1969). In *Cole*, the court held that "the only parties to a hearing on exceptions to an inventory filed in the Probate Court pursuant to Section 2115.16. . . are the exceptor and the executor, unless other persons voluntarily appear and are allowed by the court to be made parties to the proceeding," and no other interested persons can be bound by the Probate

22

Court's determination in the summary proceeding provided for by § 2115.16. *Id.* at syllabus ¶¶ 1-2. Ohio courts have thus found that an order of a probate court approving an inventory does not have preclusive effect where no exceptions to the inventory have been filed. *See Eger v. Eger*, 39 Ohio App. 2d 14, 19 (1974); *In re Estate of Rudy*, No. 93-T-4850, 1993 WL 545111, *2-3 (Ohio App. Dec. 3, 1993); *cf. In re Estate of Fiorito*, No. E-79-53, 1980 WL 351422, *3, 1980 Ohio App. LEXIS 12348, *7 (Ohio App. July 11, 1980) ("Where no exceptions are filed to it, there is no judicial inquiry at all. It is only when exceptions are filed and the jurisdiction of the Probate Court is invoked to inquire into the validity of the schedule of property that the proceeding takes on the character of litigation.").

### D. Summary Regarding Ownership Claims

For all of the foregoing reasons, the court finds that the RLH Defendants' and the NPH Defendants' claims relating to ownership of all recipes and intellectual property used in the operation of TPI's business, including recipes for chili soup and hot dog sauce asserted in this proceeding, are barred by the res judicata effect of the Recipe Order, made final by the May 6, 2013, Sale Confirmation Order, under claim preclusion principles or, alternatively, as an *in rem* judgment. While the Trustee's motion for summary judgment will be granted to the extent that she argues the res judicata effect of the Recipe Order bars such claims by the RLH Defendants and the NPH Defendants, the res judicata effect similarly bars any claim of the Trustee in the Recipes and intellectual property and entitles the TP Defendants to judgment as a matter of law that TP Foods, and specifically, TPIP, is the sole owner of the recipes and intellectual property that were used in the business of the Receivership Entities as described in the Recipe Order. It is thus clear that the RLH Defendants and the NPH Defendants had no ownership interest in the recipes and intellectual property at issue when the NPH Estate was opened in May 2015 and thus, no effective transfer of such property occurred.

In light of the foregoing, to the extent that the Trustee alternatively argues that the Recipes are property of the bankruptcy estate such that Horvath's postpetition "transfer" of them should be avoided under 11 U.S.C. § 549, her argument is not well taken.

The court does not address the Trustee and the TP Defendants' alternative estoppel arguments, nor does it address their other alternative arguments regarding ownership, including the tangible or intangible nature of the Recipes and that the NPH Trust is not a spendthrift trust. To do so would be to render advisory opinions regarding matters not otherwise necessary to this opinion.

## VI. Turnover

Under 11 U.S.C. § 542(a), "an entity . . . in possession, custody, or control, during the case, of

15-03058-maw    Doc 172    FILED 10/07/16    ENTERED 10/07/16 09:57:09    Page 23 of 28

property that the trustee may use . . .under section 363 of this title. . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." To prevail on a claim under § 542(a), a trustee must demonstrate that the property is property the trustee may use under § 363; that is, it must be property of the bankruptcy estate. *See United States v. Chalmers (In re Wheeler),* 252 B.R. 420, 425 (W.D. Mich. 2000);11 U.S.C. § 363(b)(1) (providing that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*" ); *In re Osterwalder*, 407 B.R. 291, 294 (Bankr. N.D. Ohio 2008). "Property of the estate" broadly includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

In Count II of the complaint, the Trustee seeks an order requiring Horvath, in any capacity, to turn the Recipe Notebook over to her. However, as discussed above, the Recipe Order and Sale Confirmation Order preclude any claim by the Trustee that the recipes are property of the bankruptcy estate or that she can use, sell or lease the recipes or the Recipe Notebook, which contains recipes, at least some of which are owned by TPIP. While any rights in the appeal of the Sale Confirmation Order that Horvath had at the time the underlying bankruptcy case was commenced are property of the bankruptcy estate, such rights are distinct from, and do not give the Trustee, any interest in the recipes themselves. Horvath and the NPH Defendants are therefore entitled to judgment as a matter of law on Count II of the Trustee's complaint. For the same reasons, the court will deny the TP Defendants' motion for summary judgment on Count II of their counterclaim seeking an order requiring the Trustee to turn over the Recipe Notebook to TPIP.

## VII.  Injunctive Relief

In Count III of the complaint, the Trustee seeks an order enjoining Horvath, in any capacity, from taking any further action to convey, transfer, assign or take any other action with respect to the 'Recipes," as defined in her complaint. The RLH Defendants  and the NPH Defendants argue that the Trustee has not met her burden of proving the prerequisites for injunctive relief. The Trustee counters that she is entitled to such relief in order to protect the integrity of the court's ruling on the issue of ownership of the Recipes, which is, in essence, an assertion that she is entitled to injunctive relief under the All Writs Act.

The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "In allowing courts to protect their 'respective jurisdictions,' the Act allows them to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." *Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004). "The requirements of a traditional

injunction do not apply to injunctions under the All Writs Act...." *Id.* at 1100. However, the Act "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" *Id.* (quoting *Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). The United States Supreme Court has described the All Writs Act as a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).

In this case, the Trustee seeks to enjoin Horvath's misappropriation of the Recipes, as defined in the complaint. It is undisputed that the recipes used for products sold in the business of the Receivership Entities are trade secrets. The Ohio Uniform Trade Secrets Act provides that "[a]ctual or threatened misappropriation [of a trade secret] may be enjoined." Ohio Rev. Code § 1333.62(A). As § 1333.62 addresses the issue at hand, that statute and not the All Writs Act controls the Trustee's claim for injunctive relief. Courts have construed § 1333.62 to require a plaintiff to demonstrate the traditional prerequisites for injunctive relief. *Allied Erecting and Dismantling Co. v. Genesis Equip. & Mfg.*, 511 Fed. Appx. 398, 404 (6th Cir. 2013) (citing *Columbus Steel Castings Co. v. King Tool Co.*, Nos. 11AP-351, 11AP-355, 2011-Ohio-6826, ¶ 69 (Ohio App. Dec. 30, 2011)).

Generally, to be entitled to a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). The loss of trade secrets is usually considered an irreparable harm that cannot be measured in money damages. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008). Thus, courts have stated that irreparable harm may be presumed when a plaintiff establishes a strong likelihood of succeeding on the merits of its misappropriation of trade secrets claim or when a defendant is found to have misappropriated trade secrets. *Id.*; *Allure Jewelers, Inc. v. Ulu*, No. 1:12CV91, 2012 WL 367719, *4, 2012 U.S. Dist. LEXIS 13361, *11 (S.D. Ohio Feb. 3, 2012). However, because § 1333.62 provides that actual or threatened misappropriation of a trade secret may be enjoined, the issuance of an injunction does not require the Trustee to prove that an irreparable injury has actually occurred. *Dexxon Digital Storage, Inc. v. Haenszel*, 161 Ohio App. 3d 747, 755 (2005). A threatened misappropriation is also sufficient to support granting an injunction. *Id.*

25

In this case, the evidence clearly shows that Horvath has knowledge of the recipes used in the business of TPI and that he has already willfully attempted to transfer ownership of those recipes. There is no dispute that the primary value in those recipes stems from the fact that they are secret and not known to the public. The Trustee has prevailed in proving that neither Horvath nor the NPH Defendants own the recipes. While the court has found that ownership rights in the recipes lie with TPIP, not the bankruptcy estate, rights in the appeal of the Sale Confirmation Order are property of the bankruptcy estate. Any value in pursuing the appeal and attempting to unwind the sale of assets of the Receivership Entities will depend in large part on the continued trade secret status of the recipes.

The court notes, however, that only the trade secret status of recipes previously owned by the Receivership Entities and sold to TP Foods will affect the value of the appeal. Those recipes are defined in the Recipe Order as "recipes. . . for all products *sold currently or previously by the entities subject to this Receivership*. . . including but not limited to the Recipes for chili soup and hot dog sauce." [Doc. # 141, Ex. D, p.2 (emphasis added)]. The Trustee seeks to enjoin Horvath from misappropriating "Recipes" as defined in the complaint to mean the Recipe Notebook, and any and all interests claimed by NPH "with respect to any and all recipes in, derived from, based upon, etc. the Recipe Notebook *that were used by any of the Packo Entities and/or their predecessors at any time,* including but not limited to recipes for chili soup and hot dog sauce." [Doc. # 1, Complaint, ¶ 17]. Notably, the Recipe Order does not include recipes used by a predecessor of the Receivership Entities unless the Receivership Entities had themselves used them for products that they had sold.

Nevertheless, it is undisputed that NPH's claim of ownership in the Term Sheet and the License Agreement are premised on her assertions that her father wrote down all of his food recipes in a notebook that were used for the entire menu at Tony Packo's Café, a predecessor to the Packo Entities, and gave them to her with instructions that she was to be the owner of the recipes and formulas. The court may thus infer that the Recipe Notebook contains recipes for chili soup and hot dog sauce, which are recipes that were the subject of the License Agreement and were used for products being sold by the Receivership Entities. However, the record is silent as to whether any other recipes in the Recipe Notebook were being used for products sold by the Receivership Entities at the time of, or previous to, entry of the Recipe Order.

It is abundantly clear that the chili soup and hot dog sauce recipes have been the primary focus of the recipe ownership battle in this court and that compromising the trade secret status of those two recipes will impair any value to the bankruptcy estate in the appeal of the Sale Confirmation Order. For these reasons and the fact that Horvath has exhibited a willingness to ignore his obligations to this court and to

the interests of the bankruptcy estate, the Trustee has shown that a misappropriation of the chili soup and hot dog sauce recipes is at least threatened. The presumption of irreparable harm that would occur should Horvath decide to use, publish, sell, transfer, assign, or otherwise compromise the trade secret status of the recipes "rests on the assumption that the harm resulting from the loss of trade secrets will be difficult to measure in monetary terms." *Allied Erecting and Dismantling Co.,* 511 Fed. Apex. at 405. The court thus finds that the first two factors in support of granting injunctive relief are satisfied.

As to the third factor, in balancing hardships between the Trustee and Horvath, the court finds that the requested injunction is warranted. Horvath has no ownership rights in the recipes and thus is not otherwise entitled to engage in any dealings involving them. On the other hand, the Trustee and thus the bankruptcy estate risks irreparable harm absent Horvath being enjoined from any misappropriation of the recipes. And finally, the injunctive relief sought in the Trustee's complaint will serve the public interest in the orderly administration of the bankruptcy and receivership estates and by requiring Horvath, and those claiming by and through him, to do what is already required of him.

For the foregoing reasons, the court finds that the Trustee has met her burden of showing that the requested injunctive relief is warranted only with respect to recipes for chili soup and hot dog sauce, which are the only recipes in the Recipe Notebook that the Trustee has shown were used at any time by the Receivership Entities.

## CONCLUSION

The RLH Defendants' and the NPH Defendants' counterclaims and cross-claims relating to ownership interests in recipes and intellectual property used in the operation of the business of the Receivership Entities, including chili soup and hot dog sauce recipes, are barred by the res judicata effect of the Recipe Order and Sale Confirmation Order. Similarly, while the Trustee has any rights Horvath had in the appeal of the Sale Confirmation Order, any ownership interest in the Recipes claimed by the Trustee is also barred by the res judicata effect of those orders, since she stands in the shoes of Horvath as Trustee of his bankruptcy estate. The TP Defendants are entitled to judgment as a matter of law that TPIP is the owner of the recipes and intellectual property that were used in the business of the Receivership Entities as described in the Recipe Order, subject only to any resolution of the pending appeal of the Sale Confirmation Order.

Because the Recipes are not property of the bankruptcy estate and because no effective transfer occurred, the Trustee is not entitled to a judgment under 11 U.S.C. § 549 avoiding Horvath's attempted transfer of the Recipes. The RLH Defendants and the NPH Defendants are thus entitled to summary

27

judgment on Count I of the Trustee's complaint to the extent she seeks avoidance under § 549.

Also because the Recipes are not property of the bankruptcy estate, the Trustee is not entitled to turnover of the Recipe Notebook pursuant to 11 U.S.C. § 542(a), and the TP Defendants are not entitled to turnover of the Recipe Notebook by the Trustee or a declaration that the Trustee is required to execute any documents the TP Defendants require be signed in order to transfer to the TP Defendants any interests of Horvath or the bankruptcy estate in the Recipes. The RLH Defendants and the NPH Defendants are thus entitled to summary judgment on Count II of the Trustee's complaint and the Trustee is entitled to summary judgment on Counts II and III of the TP Defendants' counterclaim.

In addition, as discussed above, Horvath, in his individual capacity or as executor of the NPH Estate and trustee of the NPH Trust, will be enjoined from taking any action with respect to the chili soup and hot dog sauce recipes, including compromising their trade secret status or taking any further action to convey, transfer, use, or assign those recipes.

Finally, the court lacks subject matter jurisdiction over the NPH Defendants' cross-claim against the TP Defendants regarding the alleged unlawful use of recipes and over the TP Defendants' cross-claim against Horvath for turnover of the Recipe Notebook. The court will therefore enter a separate order dismissing those cross-claims. *See McLaughlin v. Cotner*, 193 F.3d 410, 412 (6th Cir. 1999) (affirming district court's *sua sponte* dismissal of complaint for lack of subject matter jurisdiction); *ADSA, Inc. v. Ohio*, 176 Fed. Appx. 640, 642-43 (6th Cir. 2006) (same).

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Trustee's Motion for Summary Judgment [Doc. # 140] be, and hereby is, **GRANTED in part** and **DENIED in part** as set forth above; and

**IT IS FURTHER ORDERED** that the TP Defendants' Motion for Summary Judgment [Doc. # 143] be, and hereby is, **GRANTED in part** and **DENIED in part** as set forth above; and

**IT IS FURTHER ORDERED** that the NPH Defendants' Motion for Summary Judgment [Doc. # 155] be, and hereby is, **GRANTED in part** and **DENIED in part** as set forth above; and

**IT IS FINALLY ORDERED** that the RLH Defendants' Motion for Summary Judgment [Doc. # 156] be, and hereby is, **GRANTED in part** and **DENIED in part.**

The court will enter a separate judgment in accordance with this Memorandum of Decision.

###