**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 25 2017

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-34137 |
| | ) | |
| Robin L. Horvath, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-03058 |
| | ) | |
| Ericka Parker, Chapter 7 Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| v. | ) | |
| | ) | |
| Robin L. Horvath, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant and Cross-Defendant, | ) ) ) | |
| | ) | |
| The Nancy Packo Horvath Probate Estate, | ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross-Defendant, | ) ) ) | |
| | ) | |
| The Nancy Packo Horvath Trust Under the Amended and Restated Trust Agreement Dated March 22, 2002, | ) ) ) | |
| | ) | |
| Defendant, Counter-Claimant, Cross-Claimant, and Cross Defendant, | ) ) ) | |

| | |
|---|---|
| Tony Packo's Toledo, LLC, | ) |
| | ) |
|     Defendant, Counter-Claimant, Cross-Claimant, and Cross-Defendant, | ) ) ) ) |
| TPIP, LLC, | ) ) |
| | ) |
|     Defendant, Counter-Claimant, Cross-Claimant, and Cross-Defendant. | ) ) ) |

**MEMORANDUM OF DECISION REGARDING MOTION FOR RELIEF FROM JUDGMENT**

    This adversary proceeding is back before the court on a Motion for Relief from Judgment ("Motion") [Doc. # 177] filed by Defendants Nancy Packo Horvath Probate Estate ("NPH Estate"), Robin L. Horvath in his capacity as executor of the NPH Estate, the Nancy Packo Horvath Trust under the Amended and Restated Trust Agreement dated March 22, 2002 ("NPH Trust"), and Robin L. Horvath in his capacity as trustee of the NPH Trust (collectively, the "NPH Defendants), the oppositions filed by the Plaintiff Chapter 7 Trustee [Doc. # 185] and Defendants TPIP, LLC, Tony Packo's Toledo, LLC f/k/a TP Foods, LLC (collectively, "TP Defendants") [Doc. # 184], and the NPH Defendants' reply [Doc. # 187]. The NPH Defendants seek relief from the final judgment entered by the court on October 7, 2016, ruling on the parties' respective motions for summary judgment. They bring their Motion under Rule 60(b)(4) of the Federal Rules of Civil Procedure. They now argue that this court lacked subject matter jurisdiction to enter judgment in this adversary proceeding. For the reasons that follow, the NPH Defendants' Motion will be denied.

## BACKGROUND

    The factual background of this proceeding is set forth more fully in the court's October 7, 2016, Memorandum of Decision and Order Regarding Motions for Summary Judgment [Doc. # 172], which the court incorporates by reference herein and which includes facts relating to state court litigation in 2002 between members of the Packo families, nearly three years of litigation with respect to a state court receivership proceeding, certain probate court proceedings, and nearly four years of litigation in this court relating to the involuntary bankruptcy case commenced on October 7, 2013, against Robin Horvath ("Horvath") by his accountant and two law firms trying to collect professional fees from him. The principals of the two law firm petitioning creditors are attorneys Thomas Matuszak and Troy Moore. The petitioning creditor law firms, through Matuszak and Moore, represented Horvath in the state court receivership and other proceedings. Troy Moore now represents the NPH Defendants after entry of

2

summary judgment in this proceeding. The following is a brief summary of facts relative to the NPH Defendants' Motion.

Plaintiff is the duly appointed and acting trustee and Horvath is the debtor in the underlying involuntary Chapter 7 bankruptcy case. Horvath is a fifty percent owner of Tony Packo's, Inc. and related entities ("Packo Companies"), which interest now belongs to the bankruptcy estate in the underlying Chapter 7 case. In 2010, after Fifth Third Bank obtained a cognovit judgment against the Packo Companies in the Lucas County, Ohio, Court of Common Pleas ("State Court"), the State Court appointed a receiver for all of the real and personal property of the Packo Companies and authorized the receiver to negotiate and effect a sale of such property. [Doc. # 141, Ex. C, ¶¶ 1 & 2(b) and (g)]. The sale of the receivership assets to TP Foods, LLC, closed on February 3, 2012. [Doc. # 141, Ex. P, ¶¶ 10-11].

Horvath is the son of Nancy Packo Horvath ("NPH"), and the executor of the NPH Estate and trustee of the NPH Trust, as well as the beneficiary of both. NPH died in April 2003. On July 23, 2003, Horvath applied for a summary release of NPH's estate from administration in the Probate Court of Lucas County, Ohio ("Probate Court"). [Doc. # 141, Ex. A]. In his Application for Summary Release from Administration, Horvath states that he has paid or is obligated to pay the funeral expenses of NPH and that the value of her assets is the lesser of $2,000 or the amount of her funeral and burial expenses. [*Id.* at 1]. In setting forth all known assets of the estate, Horvath included only a financial account in the amount of $1,647.37. [*Id.* at 2].

On February 10, 2015, Horvath filed amended bankruptcy Schedule B to include assets of the NPH Estate, "including, but not limited to, the License Agreement[1]... and any right arising from that agreement," as assets of his bankruptcy estate. [Case No. 13-34137, Doc. # 119, p. 4]. Horvath then returned to Probate Court on April 27, 2015, and filed an Application for Authority to Administer Estate for the NPH Estate for the purpose of opening a probate estate. [*Id.* at Doc. # 195-7; Doc. # 136, Keller Depo., p. 65]. On May 1, 2015, Horvath, as executor, filed an Inventory and Appraisal and Schedule of Assets in the Probate Court, describing the recipes and intellectual property used by Tony Packo's, Inc., as the only assets of the probate estate. [Doc. # 1, ¶ 66 and attached Ex. P and ¶ 66 of Doc. ## 42,43,45, & 76]. Thereafter, on May 5, 2015, disregarding his pending bankruptcy case and amended Schedule B claiming those assets, Horvath signed a document, as executor of the NPH Estate, that purports to transfer the recipes and intellectual property to himself, as trustee of the NPH Trust. [Doc. # 1, ¶ 67 and attached Ex. Q and ¶ 67 of Doc. ## 42, 43, 45, & 76].

---

[1] The License Agreement is an agreement regarding the Tony Packo's hot dog sauce and chili soup recipes. [Case No. 13-34137, Doc. # 168-15, p. 66].

The primary question underlying the claims, counterclaims and cross-claims in this adversary proceeding is the ownership of the recipes and intellectual property that were used by the Packo Companies and the extent of the bankruptcy estate's interest, if any, in that property. In addition to Horvath's amended Schedule B, both the NPH Defendants and the TP Defendants have claimed ownership of that property in this proceeding.

Given Horvath's beneficiary status with respect to the NPH Defendants and his inclusion of assets from the NPH Estate as assets in his amended bankruptcy Schedule B, a determination regarding the parties' ownership rights was necessary in order to determine the bankruptcy estate's interest in the recipes and intellectual property. The court concluded that the ownership claims of both the Trustee and the NPH Defendants were barred by the res judicata effect of a December 7, 2011, order of the State Court ("Recipe Order"), which decided that the recipes and intellectual property at issue were assets of the Packo Companies subject to the receivership and that the receiver had the "sole, exclusive and unrestricted right to sell and transfer" the recipes and intellectual property. [Doc. # 141, Ex. D]. The State Court had later entered an order confirming the sale of the receivership assets to TP Foods, which had, pursuant to the Asset Purchase Agreement and Bill of Sale, directed the receiver to convey them to TPIP. This court thus concluded that TPIP is the sole owner of the recipes and intellectual property that were used in the business of the receivership entities and that the bankruptcy estate's interest consists only of any rights Horvath has in the pending appeal of the State Court's receivership sale confirmation order.

The court entered summary judgment in this proceeding on October 7, 2016. No appeal was filed. On April 14, 2017, the NPH Defendants filed their Motion under Rule 60(b)(4).

While the court incorporates by reference the factual background set forth in its October 7, 2016, Memorandum of Decision and Order Regarding Motions for Summary Judgment, to the extent relevant, additional facts set forth therein are discussed in the court's analysis below.

## LAW AND ANALYSIS

The NPH Defendants move for relief from this court's October 7, 2016, judgment determining the ownership of the recipes and intellectual property used by the Packo Companies, arguing that the judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure, which applies to this adversary proceeding pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. It is the position of the NPH Defendants that the recipes and intellectual property were owned by NPH and thus, upon her death, became property of her estate. They argue that the Probate Court began to exercise jurisdiction over the assets of her estate in 2003, when NPH's will was admitted to probate and the Application for Summary

4

Release from Administration filed by Horvath was granted, and continues to exercise such jurisdiction to this date. The NPH Defendants therefore argue that the State Court improperly exercised jurisdiction over the recipes and intellectual property when it entered the December 7, 2011, Recipe Order in the receivership proceeding because, under Ohio Revised Code § 2101.24(A)(1)(c), the Probate Court has exclusive jurisdiction "[t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates. . . ." They further argue that this court lacks subject matter jurisdiction under the "probate exception" to a federal court's otherwise proper jurisdiction. For the reasons that follow, the court finds these arguments are without merit.

### The Probate Exception to Federal Jurisdiction

The United States Supreme Court has recognized a probate exception to "otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *Markham v. Allen*, 326 U.S. 490, 494 (1946). In *Marshall,* the Supreme Court addressed the derivation of the domestic relations exception and probate exception to federal court jurisdiction. *Marshall*, 547 U.S. at 305-08. It noted that, like the domestic relations exception where there also is no Article III constitutional impediment to federal court jurisdiction, the probate exception links back to language in the Judiciary Act of 1789. *Id.* at 306, 308.

The *Marshall* adversary proceeding occurred in the context of the bankruptcy case of the now late Vickie Lynn Marshall, aka the "actress" Anna Nicole Smith. Federal jurisdiction over the claims raised in *Marshall* was premised on 28 U.S.C. § 1334, the statute vesting jurisdiction over bankruptcy cases and proceedings in the federal district courts.[2] As the court will explain below, subject matter jurisdiction over this adversary proceeding in this court is likewise premised on § 1334 and the district court's referral of bankruptcy cases to the bankruptcy judges of the district under 28 U.S.C. § 157.

In making their Rule 60(b)(4) argument, the NPH Defendants assume that there is a probate exception to federal jurisdiction exercised under § 1334 and that the claims in this adversary proceeding fall within it. They overlook that the Supreme Court in *Marshall* expressly declined to decide "whether there exists any uncodified probate exception to federal bankruptcy jurisdiction under § 1334." *Marshall*, 547 U.S. at 308-09. Instead, in its first trip to the Supreme Court, *Marshall* ended up as a vehicle for addressing

---

[2] Congress authorized the federal district courts to refer bankruptcy cases in their districts to bankruptcy judges, 28 U.S.C. § 157(a), and in turn granted bankruptcy judges the authority to hear and determine certain referred matters called core proceedings, 28 U.S.C. § 157(b), and to hear and submit to the district court proposed findings of fact and conclusions of law on certain referred non-core proceedings, 28 U.S.C. § 157(c). The constitutional power of bankruptcy judges to hear and determine certain core proceedings was famously at issue in a subsequent iteration of *Marshall's* long journey through the federal courts, *Stern v. Marshall,* 564 U.S. 462 (2011). The United States District Court for the Northern District of Ohio, Western Division, has referred bankruptcy cases and proceedings to the bankruptcy judges in this district under 28 U.S.C. § 157(a), most recently through its General Order 2012-7.

15-03058-maw    Doc 194    FILED 08/25/17    ENTERED 08/25/17 14:25:42    Page 5 of 13

the "distinctly limited scope" of the probate exception to the federal diversity jurisdiction statute. *Marshall*, 547 U.S. at 310. Declining to reassess the murky underpinnings of a judicially created doctrine not compelled by the text of the Constitution or various iterations of the federal diversity jurisdiction statute, the Supreme Court seized on *Marshall* "to resolve the apparent confusion among federal courts concerning the scope of the probate exception." 547 U.S. at 305. That confusion had resulted in overly broad applications of the probate exception in the Supreme Court's view, including ultimately by the United States Court of Appeals for the Ninth Circuit in *Marshall*. The Ninth Circuit applied the probate exception to exclude Vickie Lynn Marshall's claim of tortious interference with a gift she expected from her late husband from federal bankruptcy jurisdiction over the *Marshall* adversary proceeding, deferring to "exclusive" jurisdiction in the Texas state courts over his probate estate. Emphasizing the very limited scope of the probate exception, the Supreme Court was "[s]atisfied that the instant case does not fall within the ambit of the narrow exception recognized by our decisions" and reversed the Ninth Circuit's judgment to the contrary. As a result, the Supreme Court in *Marshall* did not need to and did not reach the tougher question of whether it would actually recognize a probate exception to the exercise of federal bankruptcy jurisdiction.

The NPH Defendants' Motion thus raises the following three potential issues:

1. Are the claims the court decided in this adversary proceeding within the scope of the probate exception?

2. Is the failure to apply the probate exception the limited type of jurisdictional defect that would render this court's judgment void for purposes of Rule 60(b)(4)?

3. Is there a probate exception to the exercise of federal bankruptcy jurisdiction under 28 U.S.C. §§ 1334 and 157?

**1. Application of the Probate Exception**

In *Markham*, the Supreme Court found federal subject matter jurisdiction proper where the plaintiff commenced an action in federal district court against the executor of a decedent's estate to determine the plaintiff's rights regarding a decedent's estate. *Markham,* 326 U.S. at 495. The Supreme Court generally described the probate exception as follows:

> [F]ederal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . *it may exercise its jurisdiction to adjudicate rights in such property* where the final judgment does not undertake to interfere with the

> state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Id.* at 494 (emphasis added).

In *Marshall*, the Supreme Court observed that some lower federal courts "have puzzled over the meaning of the words 'interfere with the probate proceeding,' and some have read those words to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Marshall*, 547 U.S. at 311. The Supreme Court clarified that "the 'interference' language in *Markham* [is] essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* It thus held

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* The Supreme Court also rejected the state probate court's ruling that it had exclusive jurisdiction over the claims at issue in *Marshall* since "[j]urisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a state statute. . . .'" *Id.* at 314.

Since *Marshall*, the Sixth Circuit has stated that "the probate exception is narrowly limited to three circumstances: (1) if the plaintiff 'seek[s] to probate . . . a will'; (2) if the plaintiff 'seek[s] to . . . annul a will'; and (3) if the plaintiff 'seek[s] to reach the *res* over which the state court had custody.'" *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (citing *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 (4th Cir.2015) ("[The probate exception] applies only if a case actually requires a federal court to perform one of the acts specifically enumerated in *Marshall*: to probate a will, to annul a will, to administer a decedent's estate; or to dispose of property in the custody of a state probate court. A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks.")).

In this case, the NPH Defendants argue that, on July 23, 2003, the Probate Court began to exercise exclusive *in rem* jurisdiction over the assets of NPH's estate, which they contend includes the recipes and intellectual property used in the operation of the Packo Companies, and continues to do so to date such that the probate exception to this court's jurisdiction applies. Initially, the court notes that their argument assumes as determined fact NPH's ownership of the recipes and intellectual property at the time of her

7

death. While such ownership has been a longstanding contested matter, no court anywhere, state or federal, has ever determined that NPH was, in fact, the owner.

In any event, the NPH Defendants' new argument implicates only the third circumstance set forth in *Chevalier*. Assuming, without deciding, that NPH owned the recipes and intellectual property at the time of her death, the court must determine whether this proceeding required the court to dispose of property that was in the custody of the Probate Court. The court finds that it did not.

According to the NPH Defendants, the Probate Court had jurisdiction since July 23, 2003, pursuant to Ohio Revised Code § 2101.24(A)(1)(c), which provides that "the probate court has exclusive jurisdiction . . . [t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates." However, on July 23, 2003, the Probate Court granted Horvath's application for a summary release of NPH's estate from administration. His application made no mention of recipes and intellectual property used by the Packo Companies. No executor or administrator was appointed and no probate estate was opened. The case was closed and was not reopened for nearly 12 years until April 27, 2015, when Horvath filed an application seeking authority to administer the NPH Estate as an end run around the intervening years of litigation in both the State Court and in this court.[3] Thus, the Probate Court has not been exercising jurisdiction over the recipes and intellectual property since 2003 as the NPH Defendants contend.

In the meantime, the State Court in the receivership action entered the Recipe Order, determining ownership of the recipes and intellectual property.[4] And this court has exercised its exclusive jurisdiction over the assets scheduled by Horvath to be assets of his bankruptcy estate, specifically with respect to assets claimed to be assets of the NPH estate, at least since Horvath filed his amended Schedule B on February 10, 2015, claiming them to be assets of his bankruptcy estate. *See* 28 U.S.C. §§ 1334(a) and 157(a). Thus, this court's exercise of jurisdiction over the recipes and intellectual property at issue predates Horvath's

---

[3] This action is emblematic of a pattern of conduct by and on behalf of Horvath of grasping for new arguments and now different fora in which to make them after adverse decisions when they were not made. This pattern was illustrated again most recently on July 24, 2017, when Troy Moore filed on behalf of the NPH Estate and NPH Trust a Complaint for Declaratory Judgment in the Lucas County Probate Court. The court finds problematic the fact that the Complaint for Declaratory Judgment raises the same claims and seeks the same relief denied them by this court in its final order on summary judgment, which was not appealed, and was filed while this Rule 60(b)(4) Motion filed by Moore on April 14, 2017, was pending.

[4] The TP Defendants correctly state that Horvath, who is the executor of the NPH Estate and the trustee of the NPH Trust and a beneficiary of both, and his attorney during the State Court receivership proceeding, Troy Moore, who is now representing the NPH Defendants with respect to their Rule 60(b)(4) Motion, actively participated in the receivership proceeding and never claimed or asserted that the recipes and intellectual property used by the Packo Companies were owned by the NPH Estate or the NPH Trust.

8

attempt to reopen the NPH estate on April 27, 2015. This court was not asked to exercise jurisdiction over property already under the control of a state probate court. *See Chevalier*, 803 F.3d at 802 (stating that the court's "task is to determine whether [the plaintiff] has asked a federal court to 'elbow its way into' an ongoing 'fight over a property . . . in another court's control'") (quoting *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir.2007)).[5]

Furthermore, this court's determination that the Recipe Order has preclusive effect in this proceeding did not involve any of the acts specified in *Marshall*. This action had nothing to do with winding up the affairs of a deceased individual. It did not involve the probate or annulment of a will or the administration of a decedent's estate, and it did not dispose of, or disturb the possession of, property in the custody of a state probate court. The recipes and intellectual property were not part of any *res* distributed by the Probate Court. *See Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017)(citing *Marshall* and observing that ("[f]ederal jurisdiction is only destroyed when a plaintiff seeks to set aside a will or appropriate assets that were distributed by a probate court").[6] This court was doing what the Supreme Court permitted in *Markham:* where there is a statutory basis for exercising federal jurisdiction over a dispute between parties, as here, a federal court may adjudicate that dispute even if it concerns probate assets or could be resolved in a state probate court. As authorized by *Markham*, it simply determined the parties' rights, or lack thereof, in the recipes and intellectual property in light of the other State Court's Recipe Order. The court thus finds any probate exception to § 1334 inapplicable in this proceeding.

The "supplemental authority" filed by the NPH Defendants does not require a different result.[7] In *Estate of Dombroski v. Dombroski*, No. 14 HA 3, 2014-Ohio-5827 (Ohio App. Dec. 29, 2014), cited by the NPH Defendants, the heirs of the decedent filed a complaint in the Harrison County, Ohio, Common Pleas Court, General Division, asserting a fraud claim against the applicant that had been granted summary release from administration of the decedent's estate, a claim of conspiracy to commit fraud against the applicant and the decedent's brothers, and they sought monetary damages. *Id.* at ¶¶ 3, 5-6. The basis of the claims

---

[5] By contrast, as already noted above, on July 24, 2017, Troy Moore filed on behalf of the NPH Estate and NPH Trust a Complaint for Declaratory Judgment in the Lucas County Probate Court. That Complaint for Declaratory Judgment raises the same claims and seeks the same relief denied them by this court in its final order on summary judgment and was filed while this Rule 60(b)(4) motion filed by Moore was pending.

[6] At this time, a pinpoint citation is not available in *Osborn v. Griffin*.

[7] As the Trustee correctly points out, the NPH Defendants filed their reply brief in support of their Motion on May 26, 2017, after which no further briefing was permitted by the Local Rules of this court. Nevertheless, on July 27, 2017, the NPH Defendants filed, without leave of court, a "supplemental" brief in support of their Rule 60(b)(4) motion. The 2014 Ohio Court of Appeals case that is the crux of the "supplemental brief" is not new or controlling authority.

9

was that the applicant misrepresented the value of mineral rights listed as an asset in the summary proceeding and that the brothers conspired with the applicant to defraud the heirs of their rightful share of the decedent's estate and interest in the mineral rights. *Id.* at ¶¶ 5-6. The common pleas court dismissed the case for lack of subject matter jurisdiction, finding that the probate division had exclusive jurisdiction over the claims. *Id.* at ¶ 1. The Ohio Seventh District Court of Appeals affirmed. *Id.* at ¶ 2.

The appellate court found that raising the issues as tort claims "[did] not transform the crux of the case: that the estate should not have been released from administration due to other estate assets which should have been distributed in part to the descendants." *Id.* at ¶ 43. Relying on provisions of Ohio Revised Code § 2101.24(A)(1)(c) and (cc) granting exclusive jurisdiction to the probate courts to "order the distribution of estates" and to hear and determine an application for an order granting a summary release from administration, the court concluded that "[r]eopening the estate or the summary release and distributing the estate differently . . . clearly falls within the probate court's exclusive jurisdiction." *Id.* at ¶¶ 41-46.

*Dombroski* is factually distinguishable from this case. No party in this case has sought to have assets listed in the summary proceeding relating to the NPH Estate distributed differently than were distributed in that proceeding. The recipes and intellectual property at issue in this case were not even listed in the summary proceeding. And no claims for damages have been asserted against Horvath, the applicant in the summary proceeding.

In any event, and more importantly, *Dombroski* does not address the probate exception to federal court jurisdiction. It addresses Ohio's jurisdictional statute relating to probate courts. As stated above, "[j]urisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a state statute. . . .'" *Marshall*, 547 U.S. at 314. The court finds that *Dombroski* has no persuasive application to this court's determination of the NPH Defendants' Motion.

**2. Rule 60(b)(4) and the Probate Exception**

Under Rule 60(b)(4), the court may relieve a party from a final judgment if the judgment is void. Fed. R. Civ. P. 60(b)(4). A judgment is void under Rule 60(b)(4) "'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (citing *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). In this case, the NPH Defendants argue that both this court and the State Court lacked subject matter jurisdiction in addressing the ownership of the recipes and intellectual property used by the Packo Companies.

"A void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even

after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). However, "[a] judgment is not void . . . simply because it is or may have been erroneous." *Id.* As the Sixth Circuit Court of Appeals explains:

> A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.

*Hooks v. Hooks*, 771 F.2d 935, 949 (6th Cir. 1985) (quoting *Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 649 (1st Cir. 1972)); *Eglinton v. Loyer (In re G.A.D., Inc)*., 340 F.3d 331, 336 (6th Cir. 2003) ("a Rule 60(b)(4) motion will succeed only if the lack of subject matter jurisdiction was so glaring as to constitute 'a total want of jurisdiction'"). "[A] motion under Rule 60(b)(4) is not a substitute for a timely appeal," *Espinosa,* 559 U.S. at 270, which is precisely how the NPH Defendants are using their Motion.

The court initially addresses the NPH Defendants' argument that the State Court lacked jurisdiction to enter the Recipe Order on December 7, 2011 due to, according to the NPH Defendants, the Probate Court's exclusive jurisdiction over the recipes and intellectual property and that this court's determination that the Recipe Order had res judicata effect was, at least in part, dependant on its determination that the State Court had jurisdiction to enter that order. This argument, raised for the first time in the Motion for Relief from Judgment,[8] is nothing more than an argument that this court erred in its res judicata determination. It is not a Rule 60(b)(4) argument that this court lacked subject matter jurisdiction to make that determination.

With respect to this court's jurisdiction, although neither the NPH Defendants nor any other party raised any argument regarding the court's jurisdiction to determine the issues presented in this proceeding,

---

[8] In support of their summary judgment motion, the NPH Defendants argued that the State Court lacked jurisdiction to enter the Recipe Order since Horvath's appeal of an earlier order directing the receiver to accept the offer of TP Foods and negotiate an asset purchase agreement was still pending when the Recipe Order was entered. This court rejected that argument, finding that the Recipe Order was simply an order determining whether certain assets constituted assets of the receivership and was not inconsistent with the jurisdiction of the state court of appeals to reverse, modify, or affirm the earlier orders appealed. [*See* Doc. # 172, pp. 15-16]. The NPH Defendants advanced no other jurisdictional argument. Relevant parts of the voluminous State Court receivership proceeding record are part of the summary judgment record. Although Troy Moore also represented him there, Horvath never argued that the Probate Court had exclusive jurisdiction over the recipes and intellectual property of the Packo companies in the State Court receivership proceedings.

11

before ruling on the issues, the court necessarily addressed its jurisdiction and authority under 28 U.S.C. §§ 1334 and 157 to hear and determine each of the parties' claims and counterclaims. [*See* Doc. # 172, pp. 8-11]. As to Count I of the Plaintiff Trustee's complaint, and the counterclaims of each of the Defendants to the extent seeking a declaration as to ownership of recipes and intellectual property, the court found it had, at the very least, "arising in" jurisdiction under § 1334(b) and that they are core proceedings under § 157(b)(1) and (2)(A) that the court may hear and determine in that each required the court to determine what property constitutes property of Horvath's bankruptcy estate. [*Id.* at p. 9]; *see also* 28 U.S.C. § 1334(e)(1). And while the Defendants' cross-claims seeking declarations that they own the property at issue were not core proceedings in that they seek judgment against the other Defendants, the court found it had "related to" jurisdiction under § 1334(b) since such determinations "could conceivably have [an] effect on the estate being administered in bankruptcy." [Doc. # 172, p. 9 (quoting *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1142 (6th Cir. 1991)]. The court further found that under § 157(c)(2), it had authority to hear and determine those claims since each defendant asked the court to enter judgment on their cross-claims and thus consented to such authority. [*Id.*] The court thus concluded that it had both jurisdiction and constitutional authority to enter final judgment with respect to the parties' competing claims of ownership of the recipes and intellectual property at issue in this proceeding.

The NPH Defendants' argument that the court lacked subject matter jurisdiction due to a "probate exception" to the otherwise proper exercise of bankruptcy jurisdiction fails to show a clear usurpation of power such that the court's judgment is void under Rule 60(b)(4). While, as discussed above, the court finds no factual predicate in this case for the "probate exception" argument, raising this argument now is also an inappropriate attempt to use Rule 60(b)(4) as a substitute for a timely appeal. *See In re Gibson & Epps, L.L.C.*, 468 B.R. 279, 304 (Bankr. E.D. Tenn. 2012) ("[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." (quoting *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir.1997)).

Even if this court is wrong in its application of the probate exception to federal jurisdiction, its vagaries do not present the clear usurpation of power required to find a judgment void under Rule 60(b)(4) due to lack of subject matter jurisdiction. It is a judge made exception to a statute establishing jurisdiction the application of which the court determined, which determination was not challenged on appeal. As a judge made doctrine, parties and courts have long struggled with its fact-intensive contours and the bona

12

fides of its underpinnings as recognized by the Supreme Court in *Marshall*. As another court once aptly noted, "[t]he probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). This court applied and entered judgment under the applicable statutes governing bankruptcy jurisdiction without the NPH Defendants having raised the probate exception. Any uncodified probate exception to the statutes under which it did so does not present the kind of glaring and fundamental jurisdictional infirmity susceptible to application of Rule 60(b)(4) in the first instance. This case exemplifies the value and importance of finality versus grasping at hazy post hoc jurisdictional revisionism.

### 3. Whether There is a Probate Exception to Federal Bankruptcy Jurisdiction

As already emphasized, and sometimes glossed over, in *Marshall* the Supreme Court expressly declined to decide whether it would recognize a judicially created probate exception to the statutes establishing bankruptcy jurisdiction in the federal courts. Given the Supreme Court's delineation of the narrow scope of any such exception, and its holding that it did not apply to the claim at issue in *Marshall* in any event, it did not need to do so. Nor does this court need to do so. The present procedural posture of this case as post-judgment under Rule 60(b)(4) makes it even less necessary to address that question here. Suffice to say that as probate and bankruptcy are both fundamentally *in rem* processes, it may not be a slam dunk either way. *See Marshall,* 547 U.S. at 315-318 (Justice Stevens' concurring opinion in which he explains why he finds that there is no so-called "probate exception that ousts a federal court of jurisdiction it otherwise possesses" under any of the statutes establishing federal court jurisdiction).

### **CONCLUSION**

For all of the foregoing reasons, the court will deny the NPH Defendants' Rule 60(b)(4) Motion for Relief from Judgment. This court's October 7, 2016, final judgment in this adversary proceeding is not void for lack of subject matter jurisdiction. The court will enter a separate order in accordance with this Memorandum of Decision.

###